CLARENCE E. PHIFER, Administrator, et al., Appellants,

*v.*

GULF OIL CORPORATION, Appellee.

401 S.W.2d 782.

(*Nashville,* December Term, 1965.)

Opinion filed April 15, 1966.

HASTON & HASTON, McMinnville, for appellants.

ELLIS K. MEACHAM, Chattanooga, for appellee.

MR. JUSTICE CHATTIN delivered the opinion of the Court.

Appellee, complainant in the trial court, Gulf Oil Corporation, filed this action under the Declaratory Judgments Act against the defendants, appellants here, Clarence E. Phifer, Administrator of the Estate of Paul

Phifer, Deceased; and the City Bank & Trust Company of McMinnville.

The facts leading to this action are ably and succinctly stated by the able Chancellor in his memorandum opinion, which we quote:

"Complainant is a corporation engaged in the production and sale of petroleum products, tires, batteries and accessories. In the course of its business, one Paul Phifer, now deceased, was appointed distributor and salesman for complainant's products. This business, which operated for a number of years, was located in McMinnville, Warren County, Tennessee. Mr. Paul Phifer died July 1, 1964. Thereafter his son, Clarence E. Phifer, one of the defendants, was appointed Administrator of Paul Phifer's estate and is now engaged in the administration of said estate.

"On February 26, 1963, Paul Phifer executed and delivered to defendant Bank a chattel mortgage to secure an indebtedness in the principal amount of $20,000.00. This instrument purported to convey title to a Trustee, to tires, batteries, accessories and 'all additions to stock of merchandise of said Paul Phifer, as a merchant.' This chattel mortgage was recorded in the Register's Office of Warren County May 11, 1963, in Trust Book 44. In addition to same, the Bank held other mortgages on real estate, motor vehicles, etc.

"Pursuant to Section 64-1802 of the Tennessee Code Annotated, complainant obtained from Paul Phifer a lien agreement, executed July 1, 1963. Notice of this lien was filed in the Register's Office of Warren County on the same date, July 1, 1963, and the same was later recorded August 8, 1963, in Deed Book 136. Lien

Agreement was for the purpose of securing an indebtedness owing to complainant of approximately $7,100.00.

"At the time of Mr. Paul Phifer's death, he was indebted both to defendant Bank which had loaned him considerable money and to the complainant for goods sold and delivered to him and for monies advanced. The Lien Agreement held by complainant covered goods and merchandise, or stock in trade.

"At the time of Mr. Paul Phifer's death, he had or held a considerable amount of merchandise consisting of tires, batteries and accessories.

"By agreement of parties, the Administrator has sold this stock in trade for which he received the sum of $6,000.00, and which is being held subject to a determination of the question of validity and priority of claims or liens asserted by complainant and defendant Bank, respectively. Each of the creditors involved here have perfected claims against the Phifer estate being administered in the County Court of Warren County."

The original bill, after reciting the foregoing facts, alleges that: "Complainant, Gulf Oil Corporation, avers that it is lawfully entitled to the fund derived from the security held by it by virtue of its lien and recording thereof under the provisions of Section 64-1801, et seq., Tennessee Code Annotated. It avers that the chattel mortgage held by defendant, City Bank & Trust Company, upon the same property is void and invalid as a violation of the Bulk Sales Act of Tennessee, Sections 47-1401, et seq., Tennessee Code Annotated. To resolve the conflicting claims between the parties, complainant, Gulf

Oil Corporation, filed this bill under the provisions of the Declaratory Judgments Act of Tennessee.''

To the original bill, the Bank interposed a demurrer upon the ground that its chattel mortgage is prior in time to the merchandise lien of Gulf.

A pro confesso was entered against the defendant, Administrator.

The Chancellor overruled the demurrer of the Bank and ruled that the instrument as evidenced by the Bank's chattel mortgage is void and of no effect while Gulf's lien is a valid and prior lien on the ''stock in trade,'' which Paul Phifer owned at the time of his death. A discretionary appeal has been granted to this Court in order that the efficacy of the demurrer may be determined.

The demurrer raises the sole question of whether the chattel mortgage is a legal and proper instrument as the result of the passage of Chapter 83, Public Acts of 1953, codified as T.C.A. Section 64-1801 et seq., which permits liens on merchandise.

If the chattel mortgage is permitted by the above cited Section, the Bank will prevail under the doctrine of ''first in time, first in right.''

█ The general rule in Tennessee has been that a chattel mortgage on merchandise for sale is void per se as to creditors of the mortgagor, but remains valid as between the mortgagor and the mortgagee. *Morgan Bros. v. Dayton Coal Company,* 134 Tenn. 228, 183 S.W. 1019 (1915); *Bank of Cookville v. Bier,* 95 Tenn. 331, 32 S.W. 205 (1895); *Bank of Rome v. Haselton,* 83 Tenn. 216 (1885).

■ Prior to the passage of the Uniform Commercial Code, which went into effect July 1, 1964, and subsequent to the transactions in question, a chattel mortgage upon a stock of merchandise held for resale with possession and control in the mortgagor was fraudulent in law and absolutely void.

The Uniform Commercial Code as embodied in T.C.A. Section 47-1-102 (Chapter 81, Public Acts of 1963), under compiler's notes of Section 47-1-101, expressly repeals Section 64-1801 et seq., as follows:

"Specific repealer: Provision for transition.—(1) The following chapters and sections of Tennessee Code Annotated and all other laws or parts of laws inconsistent herewith are hereby repealed: * * * Chapter 18 of Title 64, being Sections 64-1801 through 64-1807, dealing with liens on merchandise."

However, Section 64-1801 et seq., applies to the case at bar in that the Uniform Commercial Code in T.C.A. Section 47-1-110 goes on to provide:

"Transactions validly entered into before midnight on June 30, 1964, and the rights, duties and interests flowing from them remain valid thereafter and may be terminated, completed, consummated or enforced as required or permitted by any statute or other law amended or repealed by chapter 81 of the Public Acts of 1963 as though such repeal or amendment had not occurred."

A diligent search has produced no case or any authority which construes T.C.A. Sections 64-1801 et seq., the law which must be applied in this case.

T.C.A. Section 64-1802 provides for a "continuing general lien upon such merchandise of the borrower as is

from time to time after the execution," of the written agreement. It further provides: "* * * with or without such merchandise being taken into the constructive or actual possession or custody of the lender or of a third person for the account of the lender, and such liens shall secure the lender for all his loans * * *."

While it fixes a lien upon the property, the merchandise lien does not disturb the title. T.C.A. Section 64-1804 provides that the lien is a floating lien: "When merchandise subject to the lien provided for by this chapter is sold in the ordinary course of the business of the borrower, such lien, whether or not the purchaser has knowledge of the existence thereof, shall terminate as to the merchandise so sold and shall attach to any proceeds of such sale at any time in the hands of the borrower."

On the other hand, a chattel mortgage is a conveyance from the mortgagor to the mortgagee of the title to the property mortgaged, subject to defeasance on payment by the mortgagor of the mortgage debt. *Blackwood Tire & Vulcanizing Company v. Auto Storage Company,* 133 Tenn. 515, 182 S.W. 576, L.R.A.1916E, 254 (1915); 14 C.J.S. Chattel Mortgages sec. 1, page 575.

Under the Merchandise Lien Act, title, possession and power of sale remain in the borrower. The lien created attaches to the goods but title is not affected. Upon a sale, title passes to the purchaser but the lien is transferred by operation of the statute to the proceeds of the sale. A chattel mortgage, on the other hand, conveys title to the merchandise and the borrower has no title to pass to an ordinary purchaser in the course of trade. It is because of passage of title under the chattel mortgage which makes the law frown on a mortgage on merchandise

which is held for sale. The buyer does not usually inquire into the location of title of goods held for sale.

The Bank invoked the equitable maxim, ''equity looks to the intent rather than to form.'' The Bank had its election to use the merchandise lien; instead, it sought to use a different instrument and labeled it ''chattel mortgage'' which expressly conveyed title to a Trustee.

A lien created by statute is limited in operation and extent by the terms of the statute, and can arise and be enforced only in the event and under the facts provided for in the statute; it cannot be extended by the courts to cases not provided for by the statute. 33 Am.Jur., Liens. Section 26; *Parker-Harris Company v. Tate,* 135 Tenn. 509, 188 S.W. 54, L.R.A.1916F, 935 (1916); *Rent-A-Car Company v. Belford,* 163 Tenn. 590, 45 S.W.2d 49 (1932).

Since the merchandise lien has only such force as the statute gives it, and a chattel mortgage was not expressly included in T.C.A. Section 64-1801, then this Court cannot mold a chattel mortgage into a merchandise lien.

The Uniform Commercial Code in T.C.A. Section 47-9-101 et seq., has as its purpose to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greatest certainty. See comments to official text, T.C.A. Section 47-9-101. In addition, the traditional distinction among security devices, based largely on form, are not retained. The single term ''security interest,'' applies to all transactions intended to create security interests in personal property and fixtures, even though the old descriptive terms such as chattel mortgages, conditional sales, trust

receipts, factors liens, etc., may still be used. See T.C.A. Section 47-9-102.

Furthermore, under the Uniform Commercial Code there is no distinction in determining whether "title" to collateral is in the secured party or in the debtor and adopts neither a "title theory" nor a "lien theory" of security interest. See comment to official text, T.C.A. Section 47-9-101.

■ While rights, obligations and remedies under T.C.A. Section 47-9-101 et seq., do not depend on the location of title; title was of paramount importance under the prior existing law which controls this case. The contention of the Bank that T.C.A. Section 64-1801 et seq., and the Uniform Commercial Code are in pari materia is without merit. It is too far fetched to relate the "security interest" theory of the Uniform Commercial Code back to T.C.A. Section 64-1801 et seq., and then to incorporate a chattel mortgage on merchandise held for sale as valid under T.C.A. Section 64-1801 et seq.

It is evident that the Legislature intended to, and did, create an entirely new security device in enacting T.C.A. Section 64-1801 et seq. Under it, title, possession and power of sale remain in the borrower. The lien created attaches to the goods, but title is not affected. Upon a sale, title passes to the purchaser, but the lien is transferred by operation of the statute to the proceeds of the sale. The rule that is relied upon to invalidate the chattel mortgage of the Bank has been too well intrenched in this State to infer that the Legislature intended to wipe it out by implication.

Thus, the rule which states that a mortgage upon a stock in trade with power of disposition left in the mort-

gagor is void as to other creditors makes the chattel mortgage of the Bank void.

For the reasons herein stated, the decree of the Chancellor is affirmed.

BURNETT, CHIEF JUSTICE, and DYER and CRESON, JUSTICES, concur.

WHITE, JUSTICE, not participating.