AUTO CREDIT OF NASHVILLE

v.

Melissa WIMMER.

Supreme Court of Tennessee,
at Nashville.

June 6, 2007 Session.

Aug. 16, 2007.

James D.R. Roberts and Janet L. Layman, Nashville, Tennessee, for the appellant, Auto Credit of Nashville.

Steven J. Christopher and James B. Hawkins, Gallatin, Tennessee, for the appellee, Melissa Wimmer.

Daniel W. Small (oral argue) and Timothy L. Amos, Nashville, Tennessee, for the Amicus Curiae, Tennessee Bankers Association.

Steven J. Eisen, Nashville, Tennessee, and Bradley E. Trammell and Adams S. Baldridge, Memphis, Tennessee, for the Amicus Curiae, Tennessee Consumer Finance Association.

David J. Tarpley (oral argue) and Sharmila L. Murthy, Nashville, Tennessee, and Webb A. Brewer, Frank S. Cantrell, and Craig P. Barnes, Memphis, Tennessee, for the Amicus Curiae, Tennessee Alliance for Legal Services.

## OPINION

WILLIAM M. BARKER, C.J., delivered the opinion of the court, in which JANICE M. HOLDER, CORNELIA A. CLARK, and GARY R. WADE, JJ., joined.

This case arises out of the financing and subsequent repossession of an automobile. After retaking possession of the collateral, the creditor sent written notification to the debtor that the automobile would be sold but that she could redeem the vehicle by paying the full amount owed. Although the debtor never received this notification, the creditor was unaware of that fact until after the sale of the vehicle. Because the sale price did not cover the amount owed on the vehicle, the creditor sought a deficiency judgment against the debtor. The debtor filed a counterclaim for statutory damages under the Uniform Commercial Code (UCC), claiming that she had not received proper notification. The trial court awarded a deficiency judgment against the debtor and dismissed the debtor's counterclaim. The Court of Appeals, only addressing the dismissal of the counterclaim, reversed the trial court and held that the creditor failed to furnish reasonable notification of the sale to the debtor, in that the creditor failed to take reasonable steps to determine whether the notification had been delivered to the debtor before proceeding with the sale. We reverse the Court of Appeals and hold that the UCC's reasonable notification requirement does not require the creditor to verify receipt and that the creditor's actions in this case were sufficient to comply with the statute. Therefore, the counterclaim for statutory damages is dismissed.

### Factual Background

On April 28, 2000, Melissa Wimmer ("Ms. Wimmer") purchased a 1996 Plymouth Neon from Downtown Motors in Gallatin, Tennessee. Financing for the purchase was furnished by the plaintiff, Auto Credit of Nashville ("Auto Credit"). The finance agreement between Ms. Wimmer and Auto Credit provided that Ms. Wimmer would borrow $7,199.88 at an interest rate of twenty-nine percent, to be paid in weekly payments of $69.22. Auto Credit took a security interest in the car pursuant to Article 9 of the Uniform Commercial Code ("UCC").

Over the next year and a half, Ms. Wimmer made the weekly payments to Auto Credit in accordance with the agreement. On January 15, 2002, a representative from Auto Credit telephoned Ms. Wimmer and told her that she was four weeks behind on her payments and that if she did not catch up her payments, Auto Credit would repossess the car. Ms. Wimmer disagreed that she was four weeks behind and told Auto Credit that she could not make four payments at that time. She agreed, however, to surrender the car to Auto Credit. During this telephone conversation, Ms. Wimmer was told that she would receive a letter approximately ten to fifteen days after the repossession regarding her right to redeem the vehicle.

The car was repossessed from Ms. Wimmer's home on January 17, 2002. On January 18, 2002, Auto Credit sent a letter, by certified mail, return receipt requested, to Ms. Wimmer's home address. The heading of that letter read: "NOTICE OF OUR PLAN TO SELL PROPERTY." The letter stated that Auto Credit intended to sell the car "sometime after" January 28, 2002, unless Ms. Wimmer paid the remaining debt in full. It also explained that if the sale produced less money than she owed, Auto Credit would hold her liable for the difference and could seek a deficiency judgment against her. The letter also explained how she could get the car back and how to get more information on the sale or the amount owed.

On February 12, Auto Credit's letter of notification was returned by the post office, marked "unclaimed." Notations on the returned envelope indicate that attempts were made to deliver the letter to Ms. Wimmer on January 24, February 7, and February 9, 2002. Ms. Wimmer testified that she did not receive these notifications. Ms. Wimmer admitted that she never contacted Auto Credit after the repossession, testifying that Auto Credit had instructed her not to contact them unless she received a letter from them or could pay the full amount to purchase the vehicle.

Unaware that Ms. Wimmer had not received the notification, Auto Credit sold the car at public auction on February 7, 2002, for $1,800. The proceeds from the sale were insufficient to meet the amount still owed on the car.

On February 28, 2002, Auto Credit filed suit against Ms. Wimmer in the General Sessions Court to recover the deficiency balance of $3,097.67, plus interest, fees, and costs. After a hearing, a judgment was entered on August 15, 2002, in favor of Ms. Wimmer. Auto Credit then filed an appeal and complaint in the Circuit Court of Sumner County.[1] Ms. Wimmer filed an answer and counterclaim for statutory damages under Tennessee Code Annotated section 47–9–625(c)(2) (2001) on the theory that Auto Credit failed to comply with the mandatory notification requirements of the statute.

Following a bench trial, the circuit court granted a deficiency judgment against Ms. Wimmer, finding that it was "reasonable under Tennessee law for Auto Credit of Nashville to send notification to Defendant by Certified Mail, Return Receipt Requested, and having received no response

from Defendant, to sell the automobile after a period of twenty (20) days." Ms. Wimmer filed a motion for new trial, which the trial court denied.

On appeal, the Court of Appeals was not asked to address the deficiency judgment but only to review the trial court's dismissal of Ms. Wimmer's counterclaim for statutory damages. The Court of Appeals reversed the trial court's denial of statutory damages and calculated the amount due to Ms. Wimmer as $4,318.42. These damages were offset by the deficiency judgment and costs previously awarded to Auto Credit.

Auto Credit filed a timely application for permission to appeal in this Court, which we granted.

## Analysis

■ Secured transactions, such as the auto loan at issue in this case, are governed by Article 9 of the Uniform Commercial Code, codified at Tennessee Code Annotated sections 47–9–101 through 47–9–709. A revised Article 9 was adopted by Tennessee effective July 1, 2001. 2000 Tenn. Pub. Acts 846 § 1. This revised Article 9 of the UCC has now been adopted by all fifty states, the District of Columbia, and the Virgin Islands. *See* 68A Am. Jur.2d *Secured Transactions* § 1 (2006).

Article 9 provides a comprehensive statutory framework governing the secured transaction process, from how a creditor perfects its security interest to how it forecloses on that interest. After default, a secured party may take possession of the collateral and may sell or otherwise dispose of it. Tenn.Code Ann. § 47–9–610(a) (2001). In so doing, "[e]very aspect of [the] disposition of collateral, including the

---

1. Tennessee Code Annotated section 16–15–729 (Supp.2006) provides for a trial de novo

on appeal to the circuit court.

method, manner, time, place, and other terms, must be commercially reasonable." Tenn.Code Ann. § 47–9–610(b) (2001).

A debtor may recover damages against a creditor who fails to comply with the provisions of Article 9 governing repossession and disposition of collateral. Tenn. Code Ann. § 47–9–625(c)(2) (2001). Ms. Wimmer's counterclaim against Auto Credit alleged that Auto Credit failed to comply with the notification requirements set forth in Tennessee Code Annotated section 47–9–611(b) (Supp.2006). Specifically, she argued that Auto Credit should have taken further actions to ensure that she received the notification. The Court of Appeals acknowledged that Auto Credit complied with the specific notification requirements of section 47–9–611(b) but held that this was only an initial step and that Auto Credit "should have taken reasonable steps to determine whether the notification had been delivered to Ms. Wimmer before it proceeded with the sale."

The official comment to section 47–9–611(b) provides that "[t]he notification must be reasonable as to the manner in which it is sent, its timeliness ... and its content." Tenn.Code Ann. § 47–9–611, cmt. 2 (2001). The issue in this case is what is required in the "sending" of a notification under Tennessee Code Annotated section 47–9–611(b) in order for that sending to be reasonable.

■■■ Issues of statutory construction are questions of law that are to be reviewed de novo without any presumption of correctness. *Killingsworth v. Ted Russell Ford, Inc.,* 205 S.W.3d 406, 408 (Tenn. 2006); *Freeman v. Marco Transp. Co.,* 27 S.W.3d 909, 911 (Tenn.2000). Our duty in construing statutes is to ascertain and give effect to the intention and purpose of the legislature. *See Lipscomb v. Doe,* 32 S.W.3d 840, 844 (Tenn.2000); *Freeman,* 27 S.W.3d at 911.

■■■ "'Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language.'" *Lipscomb,* 32 S.W.3d at 844 (quoting *Hawks v. City of Westmoreland,* 960 S.W.2d 10, 16 (Tenn.1997)). When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, and are not at liberty to depart from the statute's words. *Eastman Chem. Co. v. Johnson,* 151 S.W.3d 503, 507 (Tenn.2004); *Freeman,* 27 S.W.3d at 911. If an ambiguity exists, we then look at the entire statutory scheme to ascertain the legislative intent and purpose. *State v. Walls,* 62 S.W.3d 119, 121 (Tenn.2001). The statute must be construed in its entirety, and it should be assumed that the legislature used each word purposely and that those words convey some intent and have a meaning and a purpose. *Eastman Chem. Co.,* 151 S.W.3d at 507; *Tennessee Growers, Inc. v. King,* 682 S.W.2d 203, 205 (Tenn.1984).

Tennessee Code Annotated section 47–9–611(b) provides:

> Notification of disposition required. Except as otherwise provided in subsection (d) [relating to perishable and readily marketable collateral], a secured party that disposes of collateral under § 47–9–610 *shall send* to the persons specified in subsection (c) [the debtor, secondary obligors, and certain other secured parties] a reasonable authenticated notification of disposition.

Tenn.Code Ann. § 47–9–611(b) (Supp.2006) (emphasis added). The term "send" is specifically defined in Article 9 with respect to notification:

> (A) to deposit in the mail, deliver for transmission, or transmit by any other

usual means of communication, with postage or cost of transmission provided for, addressed to any address reasonable under the circumstances; or

(B) to cause the record or notification to be received within the time that it would have been received if properly sent under subparagraph (A).

Tenn.Code Ann. § 47–9–102(74) (2001). This definition of "send" is consistent with the common understanding of the meaning of the word. *See Webster's II New College Dictionary* 1029 (3d ed.2005) ("[t]o dispatch, as by a communications medium <*send* a letter>"); *Black's Law Dictionary* 1361 (6th ed.1990) ("to deposit in the mail or deliver for transmission by any other usual means . . .").

 In the provisions of the statute that discuss providing reasonable notification to the debtor of the sale of the collateral, there is no requirement for or mention of *receipt* of that notification. In fact, as used by the legislature in the general, introductory provisions of the UCC, "notifies" "is the word used when the *essential fact is the proper dispatch* of the notice, not its receipt. . . . When the essential fact is the other party's receipt of the notice, that is stated.*" Tenn.Code Ann. § 47–1–201, cmt. 26 (2001) (emphasis added). Because Tennessee Code Annotated section 47–9–611(b) expressly says "send" and makes no references to "receive" or "receipt" in its notification requirement, it follows that the creditor is only required to ensure that the notification is properly sent and is not required to ensure its receipt. Under Tennessee law, there is a rebuttable presumption that mail was received "upon proof that the letter was properly addressed, properly stamped, and duly deposited with the post office." *Wil-*

*son v. Blount County,* 207 S.W.3d 741, 749 n. 2 (Tenn.2006) (citing *Warmath v. Payne,* 3 S.W.3d 487, 492 (Tenn.Ct.App. 1999)). A creditor is not "forced to take responsibility for lost mail or the debtor's refusal to accept properly delivered mail." *R & J of Tenn., Inc. v. Blankenship–Melton Real Estate, Inc.,* 166 S.W.3d 195, 204 (Tenn.Ct.App.2004) (internal citations omitted).[2]

 There are four possible scenarios with regard to notification that can arise when a creditor takes possession of collateral and proceeds to sell that collateral. First, the creditor could send no notification, yet proceed with the sale. This would be in clear violation of the notification statute. *See* Tenn.Code Ann. § 47–9–611(b) (Supp.2006). Second, if the creditor sent the notification in compliance with the statute and knows for certain that the debtor received that notification, then the creditor could proceed with the sale without fear of adverse consequences. *Id.*

 Third is the situation where a creditor *knows* that the debtor has not received the notification, yet proceeds with the sale without making another attempt to notify the debtor. In *Mallicoat v. Volunteer Fin. & Loan Corp.,* 57 Tenn.App. 106, 415 S.W.2d 347, 350 (Tenn.Ct.App. 1966), the Court of Appeals held that it was not reasonable to proceed with the sale without making an additional attempt to contact the debtor when the creditor knew that the debtor had not received the notification of the proposed sale.

In *Mallicoat,* the creditor sent a notification of sale to the debtor by certified mail, but the notification was returned undelivered. *Id.* at 349. Despite receiving the returned notification, the creditor pro-

---

**2.** It should be noted that nothing in the statute requires that the notification be sent by certified mail—regular post would be sufficient. Of course, sending the notification by certified mail provides the creditor with a receipt of its mailing.

ceeded to conduct a sale of the collateral and sued the debtor for a deficiency judgment. *Id.* In holding the notification in that case insufficient under the predecessor statute to section 47–9–611, the Court of Appeals stated:

> In view of the undisputed proof in this case that the debtor did not receive the notice *and that the secured creditor was aware that he had not received it,* it is our opinion the creditor not only failed to show a compliance with the Act but that the record affirmatively shows a lack of compliance and a conscious disregard of the debtor's right to notice. The property was not perishable. The debtor lived in Knoxville where the creditor had its place of business and sold the property. In addition, the creditor had information as to where the debtor was employed and where his parents lived. Yet, the sale was allowed to proceed without any further effort to comply with the notice requirement.

*Id.* at 350 (emphasis added). The intermediate court's ruling in *Mallicoat* is consistent with the official comments to the revised Article 9, which were adopted in 2001. Those comments state that it is left to "judicial resolution, based on the facts of each case, ... whether the requirement of 'reasonable notification' requires a 'second try,' i.e., whether a secured party who sends notification and learns that the debtor did not receive it must attempt to locate the debtor and send another notification." Tenn.Code Ann. § 47–9–611, cmt. 6 (2001).

■ Lastly, is the situation we are faced with in this case—where the creditor has sent proper notification in compliance with the statute, but does not know if that notification has been received. This is an issue of first impression in this Court, although it has been previously addressed by the Court of Appeals in *R & J of Tennessee, Inc.,* 166 S.W.3d at 204–05, in which the intermediate appellate court held that a mere sending was insufficient and that the creditor should have verified that the debtor received the notification.[3] We disagree with the reasoning of *R & J of Tennessee, Inc.* in that respect, and hold that so long as the notification is "sent" within the meaning of Article 9, the creditor does not need to take additional steps to determine whether or not that notification has been received. As discussed above, the language of the statute is clear. Tennessee Code Annotated section 47–9–611 (Supp.2006) only requires a creditor to send proper notification to the debtor and does not require the receipt of that notification.

■ The UCC serves to promote uniformity among the jurisdictions. *See* Tenn.Code Ann. § 47–1–102(2) (2001). "The Uniform Commercial Code ... has as its purpose to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greatest certainty." *Phifer v. Gulf Oil Corp.,* 218 Tenn. 163, 401 S.W.2d 782, 785 (Tenn.1966). To require every creditor to verify receipt of notification in every situation would place an unreasonable burden on them, making secured transactions in this state unduly cumbersome. It is quite conceivable that many debtors, when faced with the notification sent by certified mail, may refuse delivery, thus prolonging the time the creditor must wait to sell the collateral, causing additional costs to accrue to the creditor. Even without such affirmative acts by the debtor, any number of situations may arise which prevent actual re-

---

**3.** A similar conclusion was reached in the unreported case of *Nationsbank v. Clegg,* No. 01–A–01–9510–CH–00469, 1996 WL 165513 (Tenn.Ct.App. Apr.10, 1996).

ceipt of written notification: debtors move, mail gets lost, or someone other than the debtor may receive the letter then misplace it.

### Conclusion

In sum, we hold that the notification requirement in Tennessee Code Annotated section 47–9–611 only requires the creditor to send proper notification and does not require the creditor to verify receipt. Auto Credit complied with the provisions of Article 9 when it sent the notification to Ms. Wimmer via certified mail, despite the fact that Ms. Wimmer never received the notification. Therefore, we reverse the decision of the Court of Appeals and dismiss Ms. Wimmer's counterclaim for statutory damages.

Costs of this appeal are taxed to Melissa Wimmer, for which execution may issue, if necessary.