IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs May 7, 2019

**STATE OF TENNESSEE v. CEDRICK DEWAYNE WHITESIDE**

**Appeal from the Circuit Court for Henderson County**
**No. 17221-3  Kyle Atkins, Judge**

_____

**No. W2018-01692-CCA-R3-CD**

_____

Defendant, Cedrick Dewayne Whiteside, was found guilty of driving under the influence of an intoxicant, criminal impersonation, driving on a cancelled, suspended, or revoked, license, and failure to exercise due care.  On appeal, he argues that the evidence presented at trial was insufficient for the trier of fact to find him guilty of driving under the influence of an intoxicant and for failure to exercise due care.  In light of the evidence presented, we uphold Defendant's driving under the influence conviction but reverse and dismiss the jury's finding of failure to exercise due care.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed in Part; Reversed and Dismissed in Part**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and D. KELLY THOMAS, JR., JJ., joined.

George Morton Googe, District Public Defender; and Hayley F. Johnson, Assistant Public Defender, for the appellant, Cedrick Dewayne Whiteside.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Eric V. Wood and Matthew A. Floyd, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

     This case arises from Defendant's arrest on April 14, 2017 following a single vehicle wreck.  Subsequently, the Henderson County Grand Jury charged Defendant with

the following five counts: count one, driving under the influence of an intoxicant in violation of Tenn. Code Ann. § 55-10-401; count two, reckless endangerment in violation of Tenn. Code Ann. § 39-13-103; count three, criminal impersonation in violation of Tenn. Code Ann. § 39-16-301; count four, driving on a cancelled, suspended or revoked license in violation of Tenn. Code Ann. § 55-50-504; and count five, failing to exercise due care in violation of Tenn. Code Ann. § 55-8-136. Defendant's reckless endangerment charge was dismissed *nolle prosequi* prior to trial.

Following a jury trial, Defendant was found guilty on all four counts presented to the jury. The trial court ordered all of Defendant's sentences to be served concurrently with each other for a total effective sentence of eleven months and twenty-nine days. Defendant did not file a motion for a new trial but filed an appeal to this Court on September 17, 2018, challenging the sufficiency of the evidence presented to convict him of driving under the influence and failing to exercise due care.

*Trial*

On April 14, 2017, between ten and eleven o'clock p.m., Trooper Douglas Williams of the Tennessee Highway Patrol was dispatched to a single vehicle crash on Interstate 40 in Henderson County. Prior to arriving on the scene, Trooper Williams was assisting another motorist approximately a mile away, and a dash camera on his patrol vehicle began recording as he left to investigate Defendant's accident. The dash camera, as well as the camera recording the activity in the back seat of the vehicle, was admitted into evidence. After arriving upon the scene, Trooper Williams located Defendant's Jeep Cherokee on an embankment facing north off of the road. The vehicle had been traveling west bound on Interstate 40 when it wrecked near the 104 mile-marker.

Trooper Williams testified that after exiting his vehicle, he immediately "check[ed] the crash scene to see if any injured persons [were] there." Defendant was standing near the vehicle, and a female passenger was stuck inside with the car, which was still running. Trooper Williams determined Defendant to be the driver of the vehicle because the trapped passenger was in the front right seat. Trooper Williams testified that his main concern initially was to get her out of the vehicle because the "Jeep was smoking" and he did not want her to "burn up in it[.]" Trooper Williams successfully turned off the vehicle and shifted its gear into the park position. He explained that during this process he noticed an open container of alcohol in the vehicle and determined that the female passenger was intoxicated. Additionally, he testified that there was an odor of alcohol coming from inside the car. The female passenger was removed from the vehicle and received help from the emergency services at the scene.

- 2 -

After assisting with the trapped passenger, Trooper Williams began questioning Defendant about the wreck. Trooper Williams testified that Defendant was "kind of frantic" and "worked up." He explained that he smelled an odor of an alcoholic beverage coming from Defendant's person. When asked about the wreck, Defendant explained that another car had pulled out in front of him. However, Trooper Williams had no other information that another vehicle was involved in the wreck. Trooper Williams asked Defendant if he was injured, and Defendant initially responded that only his arm was in pain.

After inspecting his injury, Trooper Williams asked Defendant for his identification. Defendant gave him false identification which was admitted into evidence at trial. In addition, Trooper Williams asked Defendant if he had been drinking any alcoholic beverages before the accident to which Defendant confirmed he had been drinking about three hours prior to the wreck. This encounter was recorded on the dash camera of the patrol vehicle while Trooper Williams and Defendant were standing in front of the car.

After their initial conversation, Trooper Williams attempted to administer a series of sobriety tests to Defendant to determine if he was intoxicated. At trial, Trooper Williams testified that he always asks a driver to complete three different sobriety tests, and if an individual passes the tests, the individual is free to leave. Trooper Williams asked Defendant to begin the walk and turn test. This test requires a defendant to walk heel-to-toe for a certain length and then turn around to walk back in the same manner. Initially, Defendant began the test, but failed to continue because he started complaining of an injury to his hip. Trooper Williams testified that Defendant actually failed the beginning stage of the test and such failure was an indicator of impairment. Trooper Williams asked him to continue performing the sobriety test, but Defendant adamantly refused, asserting that his injury prevented him from doing so. At this point, Trooper Williams placed him under arrest.

Trooper Williams testified that Defendant's demeanor became "extremely belligerent" after his arrest. He explained that Defendant began yelling "all kinds of things" such as expletives and racial comments towards both Trooper Williams and members of the emergency services. Trooper Williams testified that he tried to explain Tennessee's Implied Consent Advisement to Defendant, but Defendant continued "screaming and yelling at [him] so loud[ly] [he did not] know if [Defendant] heard it or not." The consent form was recited at trial and admitted into evidence as an exhibit. It reads as follows:

> If you refuse to supply a sample for breath or blood testing, no test will be
> conducted unless required by law or authorized by a search warrant or

exigent circumstances. If you do not consent the law permits me to apply for a search warrant for blood/or breath sample for chemical testing. If you do refuse to provide a sample for testing, and the Court finds that you refused, T.C.A. 55-10-407 requires that your license will be suspended for a least one year and up to five years, depending on your driving history. If you refuse you may be ordered to install and keep an ignition interlock on your vehicle for a year or more.

Trooper Williams confirmed reading the advisement to Defendant and testified that Defendant "continued cussing" at him instead of signing the form. This conversation was recorded by the camera facing the backseat of the patrol car.

Trooper Williams testified that Defendant is also seen on camera removing his wallet from his pants. Trooper Williams stated that he searched his car after Defendant's arrest and found Defendant's accurate identification stuffed under the seat. He explained that the identification "just didn't fall in there, it was stuffed in there." In addition, this identification was different than the one that Defendant had given to Trooper Williams in their initial conversation. With Defendant's correct information, Trooper Williams completed a driver's license check and discovered that Defendant's driver's license was revoked. A record from the Tennessee Department of Safety was entered into evidence by the State to show his revoked status.

Trooper Williams testified that during the transport to central booking, he could smell an odor of alcohol coming from Defendant in the back seat. Further, Trooper Williams testified that patrol car footage shows Defendant kicking the back doors of the car after arriving at the station.

On cross-examination, Trooper Williams explained that he had worked one-vehicle crashes before and that he only recalled a few of those accidents involving alcohol. He further explained that he had not seen the accident actually occur but believed it was serious enough for Defendant's car to physically roll. Additionally, he testified it was not raining the night of the accident but he could not recall if it had rained earlier in the day.

In addition, Trooper Williams testified that Defendant did not seem to be staggering or swaying. He confirmed that Defendant's cognitive abilities appeared to be intact and that Defendant attempted to comply with his orders. When asked about his frustration with Defendant's hip injury, Trooper Williams testified that Defendant had not mentioned his hip hurting until he was asked to perform the walk and turn test. Trooper Williams further explained that "it's normal for someone once they know they're going to be tested, if they're under the influence to try to get their way out of it to make up

- 4 -

things." He also acknowledged that drinking hours prior to driving was insufficient by itself to prove the offense of driving under the influence. He recognized that the degree of intoxication has to rise to the level of preventing someone from safely driving. He also conceded that he did not conduct a blood or breath test on Defendant and did not take the container of alcohol from Defendant's vehicle into evidence.

Following Trooper Williams' testimony, the defense called Mr. Donald McCaslin to the stand to testify to Defendant's prior attendance in behavioral classes. Mr. McCaslin explained that he was a former preacher who taught classes in the prison community and that Defendant attended some of the classes he provided. Mr. McCaslin believed that Defendant attended "Managing My Anger," "Sense of Self," and "Substance Abuse." Additionally, he confirmed that Defendant received a certificate in some of those classes. Mr. McCaslin did not believe that Defendant completed the "Substance Abuse" class but had attended some of the sessions.

Mr. McCaslin clarified that Defendant received certificates in "Attitudes and Behavior" and "Managing My Anger." He also reconfirmed his belief that Defendant participated in some of the sessions on "Substance Abuse" but that he did not receive a certificate for it like the other two classes.

ANALYSIS

On appeal, Defendant challenges the sufficiency of the evidence presented at trial to support his convictions of driving under the influence and failing to exercise due care. The State contends that the evidence presented was sufficient for the trier of fact to find Defendant guilty of both counts. In addition to the aforementioned claims, Defendant argues that there was insufficient evidence for the trier of fact to find him guilty of reckless endangerment. However, the reckless endangerment charge was dismissed. In regard to Defendant's convictions of driving under the influence and failing to exercise due care, we affirm in part and reverse in part.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, a defendant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

On appellate review, "we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

*Driving Under the Influence*

Defendant argues that the evidence presented at trial is insufficient to support his driving under the influence conviction because the State could not prove that Defendant was under the influence of any intoxicant, and Defendant's injuries rendered him unable to perform the field sobriety tests. The State contends that the evidence presented from Trooper Williams, the smell of alcohol that emitted from Defendant, Defendant's failure and refusal to complete the field sobriety tests, and Defendant's belligerent behavior is sufficient for a jury to find him guilty of driving under the influence. We agree with the State.

As pertinent to our review, code section 55-10-401 provides:

> It is unlawful for any person to drive or be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state . . . while under the influence of any intoxicant, . . . substance affecting the central nervous system, or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess.

Tenn. Code Ann. § 55-10-401 (West).

In the light most favorable to the State, the evidence shows that Defendant was driving under the influence at the time of his accident. In the beginning of Trooper Williams' investigation into Defendants' wreck, he noticed that there was an open container of alcohol in the vehicle, and he smelled alcohol on Defendant when their conversation began. Additionally, Defendant admitted to the officer that he had been drinking three hours prior to the wreck. Defendant was asked to complete three field sobriety tests. When asked to perform the walk and turn test, Defendant failed the initial part and then refused to continue performing the test. Defendant began complaining of an injury to his hip that he had not mentioned prior to beginning the test. The dash camera footage shows Defendant struggling to maintain his balance at the beginning of the walk and turn test and then adamantly refusing to continue walking. A reasonable trier of fact could find that this was due to his level of intoxication and not because of a hip injury.

Lastly, a jury could legitimately find that Defendant's behavior following his arrest was due to his level of intoxication. Defendant showed an outburst of "belligerent" behavior towards Trooper Williams after being arrested and continued to do so during his time in the patrol vehicle. Camera footage from inside the vehicle showed Defendant yelling at Trooper Williams and calling him inappropriate names. The footage also showed Defendant kicking the patrol car doors while he was waiting to be taken into central booking. Even though Mr. McCaslin testified as to Defendant's anger problems, presumably while sober, to discredit intoxication as a cause of Defendant's behavior, the jury chose to believe Trooper Williams' testimony that Defendant was intoxicated enough to impair his ability to safely operate a motor vehicle. This Court does not question or reweigh the credibility of witnesses or the evidence presented. *Bland,* 958 S.W.2d at 659. This is sufficient evidence for a jury to conclude that Defendant was unable to safely operate a motor vehicle due to his level of intoxication. Therefore, a reasonable trier of fact could find beyond a reasonable doubt that Defendant was guilty of driving under the influence.

*Failure to Exercise Due Care*

Additionally, Defendant argues that there was insufficient evidence to find him guilty of failing to exercise due care. Defendant asserts that this charge was based on the flawed inferences drawn by the trier of fact to convict Defendant of driving under the influence. The State contends that Defendant's single-car crash that resulted in an accident without any other vehicles involved or weather conditions was sufficient evidence to find Defendant guilty of failing to exercise due care. While we disagree that

there was insufficient evidence to find Defendant guilty of driving under the influence, we agree that the State failed to prove all the elements of the failure to exercise due care statute.

Quoting directly from the statute, the "due care clause" provides:

Notwithstanding any speed limit or zone in effect at the time, or right-of-way rules that may be applicable, every driver of a vehicle shall exercise due care by operating the vehicle at a safe speed, by maintaining a safe lookout, by keeping the vehicle under proper control *and* by devoting full time *and* attention to operating the vehicle, under the existing circumstances as necessary in order to be able to see *and* to avoid endangering life, limb or property *and* to see *and* avoid colliding with any other vehicle or person, or any road sign, guard rail or any fixed object either legally using or legally parked or legally placed, upon any roadway, within or beside the roadway right-of-way including, but not limited to, any adjacent sidewalk, bicycle lane, shoulder or berm.

Tenn. Code Ann. § 55-8-136 (b) (emphasis added). Count Five of the Indictment substantially mirrors the language of the applicable statute:

[B]y failing to operate vehicle at a safe speed, to maintain a safe lookout, to keep vehicle under proper control, and to devote full time and attention to operating the vehicle, under existing circumstances as necessary in order to be able to see and to avoid endangering life, limb, or property, in violation of § 55-8-136, Tennessee Code Annotated, all of which is against the peace and dignity of the State of Tennessee.

It is the Court's conclusion that our state legislature intended for the statute to require each element to be proven with sufficient evidence, beyond a reasonable doubt, in order to find a defendant in violation of failing to exercise due care. The primary objective of statutory construction is to ascertain and give effect to the intent of the legislature. *Auto Credit of Nashville v. Wimmer*, 231 S.W.3d 896 (Tenn. 2007). If a statute is clear and unambiguous, courts will find that intent in the plain and ordinary meaning of its language. *Brown v. Erachem Comilog, Inc.*, 231 S.W.3d 918 (Tenn. 2007). Finding no ambiguity and looking at the plain and ordinary language of Tennessee Code Annotated § 55-8-136(b), the elements are listed in a manner that requires the State to prove that *all of the listed requirements were violated* in order to find a defendant guilty of failing to exercise due care. *State v. Cleveland*, No. W2004-02892-CCA-R3-CD, 2005 WL 1707975, at *3 (Tenn. Crim. App. July 21, 2005) ("When the conjunctive conjunction "and" is used, each element so linked in the statute must be

considered jointly to obtained the objectives of the statute"). In the present case, we find that there is insufficient evidence to prove that Defendant was driving at an unsafe speed, one of the elements required to prove failing to exercise due care. Trooper Williams was not present at the time of the accident and was only a witness the events following the wreck itself. Furthermore, the State has failed to put on any proof of the speed Defendant was traveling when his car wrecked. Therefore, the evidence presented was insufficient for a trier of fact to find Defendant guilty of failure to exercise due care. Defendant is entitled to relief on this claim.

## CONCLUSION

Based upon the foregoing analysis, we affirm Defendant's conviction of driving under the influence, but reverse the trial court's holding that Defendant was failing to exercise due care, and dismiss that count of the indictment with prejudice.

_____
THOMAS T. WOODALL, JUDGE