# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 5, 2017 Session

## REGIONS BANK v. THOMAS D. THOMAS, ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Shelby County**
**No. CT00511307     Robert L. Childers, Judge**

_____

**No. W2015-00798-SC-R11-CV – Filed October 16, 2017**

_____

We granted this appeal to determine whether the Court of Appeals correctly applied the statutory "rebuttable presumption rule" under Article 9 of the Uniform Commercial Code, as codified at Tennessee Code Annotated section 47-9-626, in reversing the trial court and concluding that the Plaintiff, Regions Bank, was not entitled to recover a deficiency from the Defendants, Thomas D. Thomas, Helen L. Thomas, and The Thomas Family Living Trust. We conclude that both the trial court and the Court of Appeals erred in their respective applications of the "rebuttable presumption rule." Accordingly, the judgment of the Court of Appeals is reversed, the judgment of the trial court is vacated, and this matter is remanded to the trial court for further proceedings as set forth herein.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed; Judgment of the Trial Court Vacated; Case Remanded to the Trial Court**

JEFFREY S. BIVINS, C.J., delivered the opinion of the court, in which CORNELIA A. CLARK, SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

David R. Evans and Timothy L. Mickel, Chattanooga, Tennessee, for the appellant, Regions Bank.

Richard E. Charlton, Memphis, Tennessee, and Kirk L. Clements, Goodlettsville, Tennessee, for the appellees, Thomas D. Thomas, Helen L. Thomas, and The Thomas Family Living Trust.

**OPINION**

## I. Factual and Procedural History

This is the second appeal in this case, which arises out of a secured transaction between LGT Aviation, Inc. ("Debtor"), and the predecessor to the Plaintiff, Regions Bank ("Regions"). The pertinent facts are adequately set out in the two prior opinions of the Court of Appeals and are only briefly restated here. *See Regions Bank v. Thomas*, 422 S.W.3d 550 (Tenn. Ct. App. 2013), *perm. app. denied* (Tenn. Sept. 11, 2013) ("*Regions I*"); *Regions Bank v. Thomas*, No. W2015-00798-COA-R3-CV, 2016 WL 1719325, at *1 (Tenn. Ct. App. Apr. 27, 2016), *perm. app. granted* (Tenn. Oct. 21, 2016) ("*Regions II*").

Debtor borrowed in excess of $2,300,000 from Regions' predecessor for the purchase of a 1981 Hawker 700-A aircraft ("Aircraft"), which secured the loan. Defendants Thomas D. Thomas, Helen L. Thomas, and The Thomas Family Living Trust (collectively, "Guarantors") jointly and severally guaranteed the loan. Following Debtor's default by failure to maintain insurance on the Aircraft, Regions accelerated Debtor's payment obligations. Debtor did not repay the accelerated loan, and in October 2007, Regions filed suit against Guarantors, seeking recovery of the outstanding loan balance, interest, costs, and attorney's fees. While suit was pending, Regions repossessed the Aircraft, expended funds to render it flightworthy, and then expended additional funds to render it marketable. Regions ultimately sold the Aircraft at a private sale on December 2, 2008, for $875,000. Debtor continued to timely make all payments due on the loan until the Aircraft was sold.

The trial court held a hearing over several days in May 2011, after which it entered judgment in favor of Regions. The trial court found that Debtor had breached the loan agreement and that the breach constituted a default, that Regions had disposed of the Aircraft in a commercially reasonable manner, and that Regions was entitled to recover a judgment for a deficiency in the amount of $1,642,771.91, plus pre-judgment interest in the amount of $945.15 per day for 859 days. Guarantors appealed.

The Court of Appeals affirmed in part and reversed in part. *Regions I*, 422 S.W.3d at 567. The Court of Appeals affirmed the trial court's conclusion that Debtor had breached the loan agreement and had defaulted by failing to maintain insurance on the Aircraft, that Regions had not waived the breach and default, and that Regions had not acted in bad faith. *Id.* The Court of Appeals, however, reversed the trial court's finding that Regions had sufficiently complied with the notice requirements of Tennessee Code Annotated sections 47-9-611 and -613, and concluded that Regions' sale of the Aircraft had not been commercially reasonable on this basis. *Id.* The court vacated the trial

court's deficiency judgment and remanded the case to the trial court for further proceedings, including discovery, on the amount of the deficiency, if any, to which Regions was entitled under Tennessee Code Annotated section 47-9-626. *Id.* at 566–67. The court deemed all remaining issues pretermitted. *Id.* at 567.

On remand, no additional discovery was conducted and the trial court indicated that it would decide the case based upon the evidence previously introduced at trial, together with any additional evidence and deposition testimony already obtained but that the parties now wished to introduce. The parties were permitted to and did file proposed findings of fact and conclusions of law. On March 27, 2015, the trial court entered its "Findings of Fact, Conclusions of Law, and Judgment."[1] The trial court concluded that Regions had met its burden to rebut the presumption under Tennessee Code Annotated section 47-9-626 and that Regions was entitled to recover a deficiency in the total amount of $1,210,511.51. *Regions II*, 2016 WL 1719325, at *4. Guarantors again appealed.

The Court of Appeals reversed. *Id.* at *1, *11. The Court of Appeals determined that, in order to rebut the presumption under Tennessee Code Annotated section 47-9-626, the burden was on Regions to prove that Guarantors could not have redeemed or purchased the collateral for an amount equal to the sum of the secured obligation, expenses, and attorney's fees had proper notice been provided. *Id.* at *10. The court further determined that Regions had failed to introduce any evidence to meet its burden of proof in this regard. *Id.* at *11. Accordingly, the Court of Appeals concluded that Regions had not rebutted the statutory presumption by presenting evidence that the sale of the Aircraft still would have yielded proceeds less than the sum of the secured obligation, expenses, and attorney's fees had proper notice been provided to Guarantors. *Id.* Therefore, Regions was not entitled to a deficiency. *Id.* The Court of Appeals further concluded that Guarantors lacked standing to seek any surplus pursuant to Tennessee Code Annotated section 47-9-625. *Id.* at *6–7.

Regions filed an application for permission to appeal pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure. We granted the application.

---

[1] On March 21, 2016, the trial court entered *nunc pro tunc* to March 27, 2015, its "Amended Findings of Fact, Conclusions of Law, and Judgment."

## II. Analysis

### A. *Standard of Review*

This case involves the interpretation of a statute, which is a question of law subject to de novo review with no presumption of correctness. *See Hardy v. Tournament Players Club at Southwind*, 513 S.W.3d 427, 433 (Tenn. 2017). More particularly, it involves the application of a statutory presumption, which is a question of law, which we review de novo with no presumption of correctness. *See Borner v. Autrey*, 284 S.W.3d 216, 219 (Tenn. 2009). We review the trial court's findings of fact following a bench trial de novo upon the record with a presumption of correctness, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *Cross v. City of Memphis*, 20 S.W.3d 642, 644–45 (Tenn. 2000). We review issues related to the admission or exclusion of evidence at trial, including the admission or exclusion of expert testimony, for an abuse of discretion. *See Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992), *on reh'g* (Mar. 29, 1993).

### B. The Rebuttable Presumption Rule

This case involves a secured transaction governed by Article 9 of the Uniform Commercial Code ("UCC"), as adopted in Tennessee in its revised form effective July 1, 2001. Tenn. Code Ann. §§ 47-9-101 to -709; 2000 Tenn. Pub. Acts 2402–540. This Court previously has explained the scope of UCC Article 9:

> Article 9 provides a comprehensive statutory framework governing the secured transaction process, from how a creditor perfects its security interest to how it forecloses on that interest. After default, a secured party may take possession of the collateral and may sell or otherwise dispose of it. Tenn. Code Ann. § 47-9-610(a) (2001). In so doing, "[e]very aspect of [the] disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." Tenn. Code Ann. § 47-9-610(b) (2001).

*Auto Credit of Nashville v. Wimmer*, 231 S.W.3d 896, 899–900 (Tenn. 2007). In addition to this requirement of commercial reasonableness in the disposition of the collateral, UCC Article 9 sets forth mandatory requirements regarding the provision of notice. Tenn. Code Ann. § 47-9-611;[2] *Auto Credit of Nashville*, 231 S.W.3d at 900.[3]

---

[2] Tenn. Code Ann. § 47-9-611 provides in pertinent part:

At this stage of the proceedings, it has been conclusively determined that Regions failed to comply with the notice requirements of Tennessee Code Annotated section 47-9-611 in its disposition of the Aircraft. *See Regions I,* 422 S.W.3d at 567. This triggered the "rebuttable presumption rule," as codified at Tennessee Code Annotated section 47-9-626. As codified, the rebuttable presumption rule provides:

> In an action arising from a transaction in which the amount of a deficiency or surplus is in issue, the following rules apply:
>
> (1) A secured party need not prove compliance with the provisions of this part relating to collection, enforcement, disposition, or acceptance unless the debtor or a secondary obligor places the secured party's compliance in issue.
>
> (2) If the secured party's compliance is placed in issue, the secured party has the burden of establishing that the collection, enforcement, disposition, or acceptance was conducted in accordance with this part.

---

(b) Notification of disposition required. Except as otherwise provided in subsection (d), a secured party that disposes of collateral under § 47-9-610 shall send to the persons specified in subsection (c) a reasonable authenticated notification of disposition.

(c) Persons to be notified. To comply with subsection (b), the secured party shall send an authenticated notification of disposition to:

    (1) The debtor;

    (2) Any secondary obligor . . . .

[3] Prior to the first appeal and remand, Guarantors also contended in the trial court that the sale of the Aircraft otherwise was not commercially reasonable under Tennessee Code Annotated sections 47-9-610 and -627. However, the trial court determined that the sale was commercially reasonable and denied these claims. Although raised by Guarantors as an issue in the first appeal, their claims of commercially unreasonable acts by Regions in the disposition of the Aircraft were deemed pretermitted by the Court of Appeals. *Regions II*, 2016 WL 1719325, at *7; *Regions I*, 422 S.W.3d at 567. Guarantors similarly raised the issue in the second appeal, and the Court of Appeals again deemed the issue pretermitted. *Regions II*, 2016 WL 1719325, at *7 & n.5. Guarantors have not stated as an issue in their brief in this Court the trial court's denial of their claims of commercially unreasonable acts by Regions in the disposition of the collateral, other than the failure to provide notice. To the extent that Guarantors are attempting to raise this issue, it is waived. *See Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012).

(3) Except as otherwise provided in § 47-9-628, *if a secured party fails to prove that the collection, enforcement, disposition, or acceptance was conducted in accordance with this part relating to collection, enforcement, disposition, or acceptance, the liability of a debtor or a secondary obligor for a deficiency is limited to an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds the greater of:*

> *(A) the proceeds of the collection, enforcement, disposition, or acceptance; or*

> *(B) the amount of proceeds that would have been realized had the noncomplying secured party proceeded in accordance with this part relating to collection, enforcement, disposition, or acceptance.*

> *(4) For purposes of paragraph (3)(B), the amount of proceeds that would have been realized is equal to the sum of the secured obligation, expenses, and attorney's fees unless the secured party proves that the amount is less than that sum.*

(5) If a deficiency or surplus is calculated under § 47-9-615(f), the debtor or obligor has the burden of establishing that the amount of proceeds of the disposition is significantly below the range of prices that a complying disposition to a person other than the secured party, a person related to the secured party, or a secondary obligor would have brought.

Tenn. Code Ann. § 47-9-626 (emphasis added). As explained in the relevant comment to this statute:

> [Section 47-9-626] establishes the rebuttable presumption rule for transactions other than consumer transactions. Under paragraph (1), the secured party need not prove compliance with the relevant provisions of this Part as part of its prima facie case. If, however, the debtor or a secondary obligor raises the issue (in accordance with the forum's rules of pleading and practice), then the secured party bears the burden of proving that the collection, enforcement, disposition, or acceptance complied. In the event the secured party is unable to meet this burden, then paragraph (3) explains how to calculate the deficiency. Under this rebuttable presumption rule, the debtor or obligor is to be credited with the greater of

- 6 -

the actual proceeds of the disposition or the proceeds that would have been realized had the secured party complied with the relevant provisions. If a deficiency remains, then the secured party is entitled to recover it. The references to "the secured obligation, expenses, and attorney's fees" in paragraphs (3) and (4) embrace the application rules in Sections 9-608(a) and 9-615(a).

Tenn. Code Ann. § 47-9-626, U.C.C. cmt. 3; *see also* Tenn. Code Ann. § 47-9-101, U.C.C. cmt. 4(i).

One leading treatise has explained the operation of the rebuttable presumption rule as follows:

On a first reading of section 9-626, one may have trouble finding the rebuttable presumption rule; it is buried in 9-626(a)(4). The drafters' plan for the application of 9-626 seems to be as follows. Under subsection (a)(1), the secured party does not need to prove compliance with Part 6 unless its compliance is "placed in issue." Presumably, one needs only to prove the amount received on the sale of the collateral and the amount the debtor owes. The difference between these numbers equals the "deficiency." If the secured party's compliance is put in issue, the creditor then has the burden of showing that the "collection, enforcement, disposition, or acceptance was conducted in accordance with this part." If the secured creditor fails to prove its compliance with Part 6, it suffers the consequence stated in 9-626(a)(4), namely, a presumption that "the amount of proceeds that would have been realized [if the secured creditor had complied] is equal to the sum of the secured obligation, expenses, and attorney's fees . . . ." Of course, if the amount that would have been realized equals the amount owed, there is no deficiency.

*How does the secured creditor rebut the presumption arising from the rule by that name? The last clause in subsection 9-626(a)(4) ("unless the secured party proves that the amount received on compliance would be less than that sum") offers redemption to the misbehaving secured creditor. If it proves that a complying sale or other disposition would have brought an amount less than the amount due from the debtor, the secured creditor rebuts the presumption and earns a right to a deficiency judgment measured by the amount that would have been recovered in a complying disposition as the subtrahend in the formula (Owed-Would Have Brought). To understand all this, consider an example. Assume the debtor's total obligation (including costs of sale, etc.) to the creditor is $100,000.*

Assume also that the foreclosure sale produces $10,000 and the debtor attacks creditor's notice or conduct of the sale. If the creditor proves it complied with Part 6 of Article 9, it recovers the full $90,000. If the creditor fails to prove it complied, and does not prove what a complying foreclosure sale would have brought, the amount produced by a complying sale is presumed to be $100,000 and the creditor recovers nothing. If the creditor is found to have violated Part 6, but proves, for example, that a complying sale would have produced only $15,000, it recovers the difference between its debt and $15,000, or $85,000.

4 White, Summers, & Hillman, *Uniform Commercial Code* § 34:41 (6th ed. Dec. 2015) (emphasis added) (footnotes omitted); *see also Hawkland UCC Series* § 9-626 [Rev] (June 2016).

Thus, pursuant to the rebuttable presumption rule, in order to recover a deficiency judgment, Regions was required to rebut the statutory presumption and to prove that, had it given Guarantors the required notice of the sale of the Aircraft, the proceeds from the sale still would have been an amount less than the sum of the secured obligation, expenses, and attorney's fees. Tenn. Code Ann. § 47-9-626(4).

Messrs. White, Summers, and Hillman suggest that "the drafters [of the UCC] have done an admirable job making the law clear and, at least in business transactions, uniform," and that "[s]ection 9-626 provides a clear roadmap for judges and lawyers." White, Summers & Hillman, *supra*, § 34:41 (footnotes omitted). This case suggests, however, that the roadmap contains a significant, unmarked turn. This case raises the question of the proper operation of the rebuttable presumption rule and, more particularly, the proof relevant to, and required or sufficient to, rebut the statutory presumption and permit the recovery of a deficiency under Tennessee Code Annotated section 47-9-626(3) and (4). This question does not appear to have been definitively answered by the drafters of the UCC, by the commentators, or by the courts in this or other states. Moreover, the trial court and the Court of Appeals reached differing conclusions in this case. We endeavor here to answer this question.

During the trial before the first appeal and remand, the parties introduced evidence relevant to the rebuttable presumption rule. Regions, however, succeeded in precluding Guarantors from introducing evidence regarding what they could and would have done had they received notice of the sale and, particularly, evidence regarding their ability and motivation to redeem or purchase the collateral for an amount equal to the sum of the secured obligation, expenses, and attorney's fees. Guarantors made no offer of proof for the record, and Regions did not introduce any countervailing evidence. Because the trial court determined that Regions complied with the notice requirements under Tennessee

- 8 -

Code Annotated section 47-9-611 and determined that the sale of the Aircraft was otherwise commercially reasonable under Tennessee Code Annotated sections 47-9-610 and 47-9-627, the trial court made no findings regarding the rebuttable presumption rule under Tennessee Code Annotated section 47-9-626. This included an absence of findings regarding the Guarantors' ability or motivation to redeem or purchase the collateral for an amount equal to the sum of the secured obligation, expenses, and attorney's fees.

In the first appeal, the Court of Appeals determined that Regions, in fact, had failed to provide the statutorily required notice to Guarantors and that this triggered the operation of the rebuttable presumption rule under Tennessee Code Annotated section 47-9-626. The Court of Appeals remanded the case to the trial court because the trial court had not made any factual findings regarding (1) Regions' rebuttal of the presumption; (2) Regions' proof that, had it given Guarantors the required notice of the sale of the collateral, the proceeds from the sale still would have been an amount less than the sum of the secured obligation, expenses, and attorney's fees; or (3) Regions' possible entitlement to a deficiency judgment after application of the rebuttable presumption rule. In doing so, however, the Court of Appeals did not provide any guidance to the parties or to the trial court with respect to what proof was relevant to or was required or sufficient to rebut the presumption under Tennessee Code Annotated section 47-9-626.

On remand, the parties contested this question in the trial court. Guarantors contended that in order to rebut the statutory presumption and recover a deficiency, Regions was required to prove "that the debtor could not have paid off the loan had the debtor received notice, or that the debtor could not have found a buyer or be[en] present at the sale to bid on the property or have others do so, to the end that it not be sacrificed by a sale at less than its true value." Guarantors further contended that Regions had failed to offer any proof in this regard. In contrast, Regions contended that the only relevant proof was proof with respect to the fair market value of the collateral at the time of the sale and that the determination of fair market value was the only purpose of the remand to the trial court. Regions further contended that proof that the price obtained at the sale was equal to or greater than the fair market value was sufficient to rebut the statutory presumption under Tennessee Code Annotated section 47-9-626.

Leading up to its decision on remand, the trial court precluded any additional discovery, with one possible exception that did not materialize. The trial court further indicated that it would "make its findings, based on the record adduced at trial and any additional deposition testimony and/or exhibits already procured by the Parties in the prior proceedings that they wished the Court to consider in connection with its findings and ruling on remand." The only additional deposition testimony introduced was that of Regions' witnesses Joseph Duncan and Edd Conn, as designated by the parties and

subject to certain objections of Guarantors, which the trial court sustained. The trial court also made clear that it rejected Guarantors' contention that Regions had the burden to introduce evidence that Guarantors could not have paid off the secured obligation had they received notice or that Guarantors could not have found a buyer or been present at the sale to bid on the property or to have others do so.

The parties submitted proposed findings of fact and conclusions of law. In its proposed findings and conclusions, Regions continued to assert that remand was for the sole purpose of determining the fair market value of the Aircraft. It proposed that the trial court conclude that Regions had met its burden of proof by a preponderance of the evidence under the rebuttable presumption rule, Tennessee Code Annotated section 47-9-626(3) and (4), by establishing the fair market value of the Aircraft on the date of sale. Regions asserted that the fair market value of the Aircraft was $850,000, and that it had received in excess of that value, $875,000, at the sale. Thus, according to Regions, it was entitled to recover a deficiency.

In their proposed findings and conclusions, Guarantors contended that the inquiry for the trial court on remand was not limited to a determination of the fair market value of the Aircraft. Rather, according to Guarantors, "[t]he burden of proof on Regions [was] broader than simply the fair market value of the collateral at the time of sale." The burden included, as a preliminary matter, rebuttal of the presumption that Guarantors could and would have redeemed the Aircraft by satisfying the indebtedness. Guarantors proposed that the trial court find that they "were financially capable of preserving their equity in the Aircraft and that they would have redeemed it and Regions would have recovered the full amount of the debt." Guarantors asserted that there was in the record no proof of their inability to satisfy the debt or to redeem the Aircraft had they received notice of the sale. In their proposed conclusions, Guarantors urged the trial court to conclude that they were denied their right to redeem the Aircraft following proper notice, that there is a presumption that proper notice would have permitted them to redeem the Aircraft, and that Regions failed to offer any evidence to rebut this presumption.

The trial court concluded that Regions had rebutted the presumption under the rebuttable presumption rule codified in Tennessee Code Annotated section 47-9-626(3) and (4), based on the court's consideration of Regions' evidence and Guarantors' countervailing evidence of the fair market value of the Aircraft. The trial court gave no consideration to proof regarding Guarantors' ability and motivation to redeem or purchase the Aircraft for an amount equal to the sum of the secured obligation, expenses, and attorney's fees, or to the absence of any countervailing proof. The trial court concluded:

Regions Bank has met its preponderance of the evidence burden of proof obligation under the "rebuttable presumption rule," in Tennessee Code Annotated Section 47-9-626(4), by presenting evidence that established the fair market value of the Aircraft at the time of sale on December 2, 2008.

The trial court, thus, accepted Regions' contention regarding the proof relevant and sufficient to rebut the presumption under Tennessee Code Annotated section 47-9-626(3) and (4), such proof being limited to the fair market value of the Aircraft at the time of sale. Once again, the trial court made no findings with respect to Guarantors' ability or motivation to redeem or purchase the Aircraft.

The Court of Appeals, however, disagreed with Regions' position. In so doing, the court relied in the first instance on its construction of the language of the rebuttable presumption rule as codified in the Tennessee statute:

> [T]he provisions of the codified rule do not track the rebuttable presumption rule as that rule was often judicially defined. Under the common judicial phrasing of the rule, a noncomplying secured party could still recover a deficiency if it presented evidence that the fair market value of the collateral was less than the outstanding indebtedness. However, a close examination at the relevant provisions of the codified rule reveals that the statute's focus is not so limited. . . . The upshot of this statute is that a secured party cannot recover a deficiency unless it proves that compliance with the commercial code's collection, enforcement, disposition, and acceptance requirements would have yielded a sum lesser than the total secured obligation, together with attorney's fees and expenses. Thus, Regions cannot obtain a deficiency judgment in this case unless it presented evidence showing that, had it provided proper notice and conducted a commercially reasonable sale, it would not have been fully satisfied.
>
> The rule outlined in section 47-9-626 is slightly different from the previous common judicial articulations of the rebuttable presumption rule because the potential rebutting evidence under the codified rule is not narrowly tied to whether the creditor received fair market value for the collateral. Rather, under the plain language of the statute, a secured party bears the burden of tendering probative evidence that its compliance with the relevant provisions would have yielded a lesser sum than the total outstanding indebtedness, plus expenses, and attorney's fees.

*Regions II*, 2016 WL 1719325, at *8–9 (citations omitted). The court also relied on the purpose of the notice requirements:

- 11 -

The significance of the notice requirements is two-fold. In addition to allowing debtors and secondary obligors the opportunity to avoid a sale altogether by discharging the debt and redeeming the collateral, the notice requirements afford such parties a reasonable opportunity to see that the collateral brings a fair price.

Understanding the function of the notice requirements helps to underscore why secured creditors cannot narrowly focus on the fair market value of collateral when their noncompliance with the applicable notice of sale requirements has been established. . . . [S]ecured parties cannot ignore the potential effect that notice can have on their ultimate recovery. Indeed, it is entirely possible that secured parties can receive an amount greater than the fair market value of collateral if they adhere to the commercial code's requirements regarding notice. A debtor or guarantor may be motivated to redeem the collateral prior to sale, and a debtor or guarantor can always try to "bid up" the price of collateral at a sale held by the creditor. Under the latter scenario, the debtor or guarantor may arrange to have a close friend or associate purchase the collateral at a specified price. Absent proper notice, however, these actions are frustrated. Notice can make a difference, irrespective of what the market may otherwise dictate that the collateral is worth. If secured parties have failed to provide proper notice, it is their burden to show that the amount they would have realized through compliance is less than the "sum of the secured obligation, expenses, and attorney's fees."

*Id.* at *9–10 (footnotes omitted) (citations omitted). Applying this analysis to the case before it, the Court of Appeals rejected Regions' contention and adopted that of Guarantors. The court concluded that the burden had been on Regions to produce evidence of Guarantors' potential response to a notice of sale:

Regions failed to meet its statutory burden in this case because it put on no evidence attempting to show that providing proper notice to the Guarantors would not have resulted in its full satisfaction. Although Regions notes that the trial court did not allow the Guarantors to introduce evidence during the May 2011 hearing as to what they would have done had they been given proper notice and further notes that the Guarantors did not request the opportunity to introduce such evidence on remand, whether the Guarantors properly submitted proof on such issues into the evidentiary record is ultimately of no moment. The Guarantors did not have to rebut a presumption that notice would not have affected Regions' ultimate

- 12 -

recovery. That is not the standard under Tennessee Code Annotated section 47-9-626. Rather, having failed to provide sufficient notice of sale, Regions had the burden of showing that it would not have been satisfied had it given the Guarantors proper notice.

> . . . .

> Had the Guarantors been given notice, they potentially could have redeemed the collateral or taken other actions that would have resulted in Regions' total satisfaction. Despite these possibilities, Regions did not attempt to show that it would not have been fully satisfied had it provided proper notice. In fact, whenever the Guarantors attempted to introduce evidence concerning their financial worth and ability to buy the collateral, Regions objected, with success, that such evidence was irrelevant. As already noted, it does not ultimately matter that the Guarantors failed to present evidence in this case on what they would have done had they been given notice. Under the statute, Regions was the party initially obligated to show that providing notice would not have mattered. It failed to introduce any evidence on this issue.

*Id.* at *10–11 (footnotes omitted) (citations omitted).

Thus, the Court of Appeals concluded that evidence of a debtor's or a guarantor's potential response to a notice of sale, i.e., that the debtor or guarantor could and would have redeemed or purchased the collateral for an amount equal to the sum of the secured obligation, expenses, and attorney's fees, is relevant to the application of the rebuttable presumption rule. The Court of Appeals' holding was not limited to a determination of relevance, however. As the foregoing makes clear, the Court of Appeals also concluded that evidence of the debtor's or guarantor's inability in this regard is *required* to rebut the presumption under Tennessee Code Annotated section 47-9-626(3) and (4), at least in the context of a case in which the rebuttable presumption rule is invoked as a result of a creditor's failure to provide the statutorily required notice.[4] In other words, as Regions contends in this Court, the Court of Appeals placed on Regions as the secured creditor the burden of proving in the first instance a negative; namely, that Guarantors could not and

---

[4] As previously noted, the Court of Appeals deemed pretermitted any issue regarding the commercial reasonableness of the sale of the Aircraft under Tennessee Code Annotated section 47-9-610 in respects other than the absence of notice. Consequently, the scope of the Court of Appeals' holding was limited to the context of an absence of notice.

would not have redeemed or purchased the Aircraft for an amount equal to the sum of the secured obligation, expenses, and attorney's fees had they received notice of the sale.

Regions and Guarantors assert their same positions in this Court; Regions adheres to the conclusion reached by the trial court, and Guarantors adhere to that reached by the Court of Appeals. We reject both positions.

We hold that a secured creditor is not required to introduce evidence negating a debtor's or a guarantor's ability or motivation to redeem or purchase the collateral for an amount equal to the sum of the secured obligation, expenses and attorney's fees in order for the creditor to rebut the presumption under the codified rebuttable presumption rule and create a question of fact. Rather, by introducing evidence that the collateral was sold for an amount equal to or in excess of its fair market value, a creditor may sufficiently rebut the presumption to create a question of fact as to whether the sale of the collateral still would have yielded proceeds less than the sum of the secured obligation, expenses, and attorney's fees had proper notice been provided. This, however, does not end the matter. In cases in which the statutorily required notice has not been provided, evidence of a debtor's or a guarantor's ability and motivation to redeem or purchase the collateral for an amount equal to the sum of the secured obligation, expenses, and attorney's fees may be relevant to the ultimate determination of the amount of proceeds that would have been realized had the secured creditor provided the statutorily required notice.[5] Therefore, a debtor or guarantor, may offer such evidence, in addition to any countervailing evidence regarding the fair market value of the collateral. In ultimately determining the fact question of the amount of proceeds that would have been realized had the noncomplying secured creditor provided the statutorily required notice, and the amount of the deficiency, if any, to which the creditor may be entitled, the trial court should consider and weigh the totality of the relevant evidence introduced by the parties. The ultimate burden of proof, however, remains on the noncomplying secured creditor to prove that the sale of the collateral still would have yielded proceeds less than the sum of the secured obligation, expenses, and attorney's fees had proper notice been provided.

We believe that this holding is logical and is supported by the analytical framework applicable to statutory rebuttable presumptions generally, the language of the statute, the purpose of the notice requirement, and case law from this and other jurisdictions.

---

[5] We are not required and do not undertake in this case to determine whether such evidence is relevant in those cases in which the statutorily required notice is provided but the disposition of the collateral is otherwise not commercially reasonable as required by Tennessee Code Annotated section 47-9-610.

Even prior to the adoption of the rebuttable presumption rule in the UCC and its codification in Tennessee, the appellate courts of this State applied the rule to cases involving the disposition of collateral in a commercially unreasonable manner or without proper notice as required under the UCC as then adopted in Tennessee. In a case involving the failure to give notice, for example, the Court of Appeals explained the analytical framework applicable to the rebuttable presumption rule:

> Here it is appropriate to examine in more detail the nature of the presumption raised. Presumptions used in the law of evidence are of two kinds. The first is a presumption of law which bears no relationship to a logical deduction and the second one of fact which does have a rational basis and might more accurately be termed an inference. *When creditable evidence is introduced to rebut a presumption of law it disappears from the case and is no longer to be considered.* An inference, however, remains in the case to be considered with other evidence and given such weight as the trier of the fact may choose.

> We believe the presumption enunciated in *Investors Acceptance Company* is one of law as we see no particular logical basis for its indulgence. It seems to us that as was indicated in *Norton*, *it is a burden-shifting device* requiring the party who is in a better position to have knowledge of the facts *to go forward with the evidence*. Our conviction in this regard is buttressed by Judge Todd's use of the word "prima facie" which was addressed by the Supreme Court of Michigan in *Hill v. Hairston*, 1 N.W.2d 34, 36 ([Mich.] 1941), thusly:

>> The rule is better expressed in the quotation from *Gillett v. Michigan United Traction Co.*, [171 N.W. 536, 538 (Mich. 1919)], *In Re Cotcher's Estate*, [264 N.W. 325, 326 (Mich. 1936)], as follows: "It is now quite generally held by the courts that *a rebuttable or prima facie presumption has no weight as evidence. It serves to establish a prima facie case; but, if challenged by rebutting evidence, the presumption cannot be weighed against the evidence. Supporting evidence must be introduced, and it then becomes a question of weighing the actual evidence introduced, without giving any evidential force to the presumption itself.*"

- 15 -

> *In view of the fact that creditable evidence was introduced sufficient to rebut the prima facie presumption raised, we shall review the proof touching on this question to determine where the preponderance lies*.

*ITT Indus. Credit Co. v. Rector*, 1982 WL 170990 (Tenn. Ct. App. May 28, 1982) (emphasis added) (citations omitted); *see also Hagan v. Phipps*, No. M2010-00002-COA-R3-CV, 2010 WL 3852310 at *5–6 (Tenn. Ct. App. Sept. 28, 2010) (holding in a non-UCC case that where testimony was introduced which rebutted a statutory presumption, the issue became a question of fact for the trier of fact and that where there also was evidence calling into question the credibility of the rebutting testimony there was a question of fact).

The Uniform Commercial Code explains the operation of a presumption, including that created by the codified rebuttable presumption rule, as follows: "Whenever chapters 1–9 of this title create a 'presumption' with respect to a fact, or provide that a fact is 'presumed', the trier of fact must find the existence of the fact *unless and until evidence is introduced that supports a finding of its nonexistence*." Tenn. Code Ann. § 47-1-206 (emphasis added). As the comment to this section explains: "Several sections of the Uniform Commercial Code state that there is a 'presumption' as to a certain fact, or that the fact is 'presumed.' This section, derived from the definition appearing in former Section 1-201(31), indicates the effect of those provisions on the proof process." *Id.* § 47-1-206, U.C.C. cmt. 1.

Although Tennessee Code Annotated section 47-9-626 does not use the term "presumption," there is no question that this statutory provision is intended to be a codification of the rebuttable presumption rule and that it serves to create a rebuttable presumption. Both Comment 3 to this section and the definition of "presumption" contained in section 47-1-206 make this clear. *See* Tenn. Code Ann. § 47-9-626. The analytical framework generally applicable to such presumptions, as articulated by the Court of Appeals in *ITT* as well as under the UCC's provision addressing presumptions, is thus applicable to this section of the statute and the rebuttable presumption rule codified therein.

Under this analytical framework, the trial court is to first consider whether the creditor, which bears the initial burden of rebutting the presumption, has introduced evidence which supports a finding of the nonexistence of the presumed fact. *See* Tenn. Code Ann. § 47-1-206. The presumed fact under the codified rebuttable presumption rule is that the amount of proceeds that would have been realized from the sale of the collateral had the creditor proceeded in accordance with the provisions of UCC Article 9 relating to collection, enforcement, disposition, or acceptance is equal to the sum of the secured obligation, expenses, and attorney's fees, thereby eliminating any potential

deficiency. If the court finds that sufficient rebutting evidence has been introduced by the creditor, the presumption falls away. As a result, this fact may no longer be presumed. The creditor, however, retains the burden of proof. The court must consider and weigh all evidence introduced by the parties, both the creditor and the debtor or guarantor, which bears on this previously presumed fact and the court must make a determination of fact without the benefit of the presumption. *See ITT*, 1982 WL 170990, at \* 383-84; *see also Key Equip. Fin., Inc. v. Hawkins*, 985 A.2d 1139, 1144–45 (Me. 2009) (explaining that under New York's codified "rebuttable presumption rule," "the effect of a presumption is 'that the trier of fact must find the existence of the fact presumed unless and until *evidence is introduced which would support a finding of its nonexistence*.' To rebut the presumption, [the creditor] *need only have provided 'some evidence'* that the sale proceeds would have been less than the sum of the secured obligation, expenses, and attorney fees even if authenticated notice had been given." (emphasis added) (citations omitted)); *Hagan*, 2010 WL 3852310, at \*5–6.

We do not find that the language of the codified rebuttable presumption rule mandates the specific evidence which a creditor must introduce in the first instance to sufficiently rebut the presumption that the sale would have yielded an amount equal to the sum of the secured obligation, expenses, and attorney's fees and to create a question of fact. More specifically, we do not find that the language of the codified rule mandates that a creditor introduce in the first instance evidence which establishes the inability or lack of desire on the part of a debtor or guarantor to redeem or purchase the collateral for an amount equal to the sum of the secured obligation, expenses, and attorney's fees. The fact that the text of the codified rule contains no reference to fair market value does not negate the relevance of evidence that the collateral was sold at its fair market value to the question of whether, had proper notice been provided, the proceeds from the sale of the collateral still would have been in an amount less than the sum of the secured obligation, expenses, and attorney's fees.

Although predating the codification of the rebuttable presumption rule, we find prior decisions of our appellate courts addressing the presumption to be instructive.[6] Contrary to the Court of Appeals in this case, we do not find the court's prior articulation

---

[6] The parties have not cited nor have we located any decisions from Tennessee's appellate courts which expressly address the rebuttable presumption rule as codified. The decision in *R & J of Tennessee, Inc. v. Blankenship-Melton Real Estate, Inc.*, 166 S.W.3d 195 (Tenn. Ct. App. 2004), *abrogated by Auto Credit of Nashville v. Wimmer*, 231 S.W.3d 896 (Tenn. 2007), was rendered after the effective date of the codified rebuttable presumption rule. Although the Court of Appeals discussed the rebuttable presumption rule in *R & J*, it did not cite the codified rule or the language of that rule. Rather, the court cited and relied on the pre-codification rule as articulated and applied in earlier court decisions. *Id.* at 210–11.

of the fact presumed or the burden to be met by a creditor under the pre-codification rebuttable presumption rule to be materially different from that under the codified version of the rule.  Under both the pre-codification rule and the codified rule, the creditor ultimately must establish that the amount that would have been obtained at a sale conducted in accordance with the requirements of UCC Article 9 as adopted in this State is less than the sum of the secured obligation, expenses, and attorney's fees in order to recover a deficiency.

For example, in *ITT*, a pre-codification case, the Court of Appeals described the fact presumed and the presumption to be rebutted under the rebuttable presumption rule as follows: "[A] presumption arises that 'the collateral was worth at least the amount of the debt, thereby shifting to the creditor the burden of proving *the amount that should reasonably have been obtained through a sale conducted according to law.*'"  *ITT*, 1982 WL 170990, at \*383 (emphasis added) (quoting *Norton v. Nat'l Bank of Commerce of Pine Bluff*, 398 S.W.2d 538, 542 (Ark. 1966), *abrogated by First State Bank of Morrilton v. Hallett*, 722 S.W.2d 555 (Ark. 1987)).  After then discussing the analytical framework applicable to the rebuttable presumption rule, the *ITT* court concluded: "In view of the fact that creditable evidence was introduced sufficient to rebut the prima facie presumption raised, we shall review the proof touching on this question to determine where the preponderance lies."  *Id.* at 384.  That "creditable evidence . . . sufficient to rebut the prima facie presumption" was evidence of the fair market value of the collateral.  *Id.*  The court next considered all of the proof relative to the issue and determined that the sale price represented the fair market value of the collateral and that this resulted in a deficiency.  *Id.*

We additionally note that, in at least some of the pre-codification cases in which the rebuttable presumption rule has been addressed, the Court of Appeals expressly noted the purpose of notice under UCC Article 9, as did the Court of Appeals in this case.  And yet, in those prior cases, the court concluded that the creditor's introduction of evidence of the sale of the collateral at fair market value was relevant to rebuttal of the presumption and might be sufficient to rebut the presumption, without any mention of the need for evidence negating the possible ability or motivation of a debtor or guarantor to redeem or purchase the collateral for an amount equal to the sum of the secured obligation, expenses, and attorney's fees.  *See, e.g.*, *ITT*, 1982 WL 170990, at \*383.

We also find instructive decisions from other jurisdictions applying the very same rebuttable presumption rule as that codified in Tennessee.  These decisions have determined that a creditor rebuts the statutory presumption by presenting proof of the fair market value of the collateral.  These decisions make no mention of a requirement that a creditor present evidence negating the ability or motivation of a debtor or guarantor to

redeem or purchase the collateral for an amount equal to the sum of the secured obligation, expenses, and attorney's fees in order to rebut the presumption.

> For example, the Supreme Judicial Court of Maine, applying New York law, has explained the operation of the codified rebuttable presumption as follows:

> > However, [the creditor's] failure to comply with [the notice] requirement only created a presumption that, if the proper notice had been given, the sale proceeds would have equaled the sum of the secured obligation, expenses, and attorney fees. N.Y. U.C.C. Law § 9-626(a)(3)-(4); *Coxall v. Clover Commercial Corp.*, . . . 781 N.Y.S.2d 567, 576 (Civ. Ct. 2004) (discussing the adoption of the rebuttable presumption rule in New York for non-consumer transactions).

> > [¶ 19]. Under New York law, the effect of a presumption is "that the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its nonexistence." N.Y. U.C.C. Law § 1-201(31) (Consol. 1999). To rebut the presumption, [the creditor] need only have provided "some evidence" that the sale proceeds would have been less than the sum of the secured obligation, expenses, and attorney fees even if authenticated notice had been given. *See Freeman Check Cashing, Inc. v. State*, . . . 412 N.Y.S.2d 963, 964–65 (Ct. Cl. 1979).

*Hawkins*, 985 A.2d at 1144–45 (footnote omitted). The court went on to hold that the creditor had "produced some evidence that it was more probable than not that the [collateral] would still have sold for [the same amount] if [the guarantor] had been given authenticated notice" and that it had therefore rebutted the presumption under the codified rebuttable presumption rule. *Id.* at 1145. The evidence which the creditor had produced concerned the sale of the collateral at fair market value and did not include any evidence regarding the ability of the guarantor to redeem the collateral or to purchase the collateral for an amount equal to the sum of the secured obligation, expenses, and attorney's fees. *Id.*; *see also Aviation Fin. Group, LLC v. DUC Hous. Partners, Inc.*, No. CV 08-535-LMB, 2010 WL 1576841 (D. Idaho Apr. 20, 2010) (applying Idaho law).

> That such a requirement is not placed on the creditor in order to rebut the presumption under the codified version of the rebuttable presumption rule is made particularly clear by a decision from the Ohio Court of Appeals. In *Midstate Educators Credit Union, Inc. v. Werner*, 886 N.E.2d 893 (Ohio Ct. App. 2008), the plaintiff creditor sought recovery of a deficiency from the defendant debtor. The debtor asserted as an affirmative defense lack of notice. *Id.* at 895–96. Following a bench trial, the trial court

entered a judgment in favor of the defendant debtor and against the plaintiff creditor. *Id.* at 896. The Ohio Court of Appeals reversed. *Id.* at 903. The court first affirmed the trial court's determination that the plaintiff creditor had not provided notice as required under the UCC as adopted in Ohio. *Id.* at 901. The court then turned to the issue of whether the plaintiff creditor had rebutted the presumption under the rebuttable presumption rule as codified in Ohio.[7] *Id.* at 902. In answering this question in the affirmative, and holding the plaintiff creditor entitled to recover a deficiency, the court explained:

> {¶ 34} In the case sub judice, the secured obligation prior to the sale was $19,944.06. The amount of the sale was $3,799, resulting in a deficiency of $14,120.06 plus interest. Because appellant was unable to prove compliance with the requisite provisions of [Ohio Rev. Code Ann.] Chapter 1309, the deficiency judgment would be limited to either (a) $19,944.06 less $3,799 or (b) $19,944.06 less what the amount would have been had there been compliance. It is presumed by statute that the amount that would have been obtained had there been compliance is $19,944.06, resulting in a deficiency of zero. If, however, appellant was able to show that even if it complied with the statutory notice provisions, the amount recovered still would have been less than the $19,944.06, it is entitled to a deficiency judgment of the difference between $19,944.06 and whatever amount is greater, $3,799, or what would have been recovered that is still less than $19,944.06.

> {¶ 35} Here, it was established at trial that even if appellant sent requisite notice of the sale and deficiency explanation that the amount that would have been recovered is the same as that actual proceeds recovered. Though appellee stated in her affidavit in support of her motion for summary judgment that she needed a vehicle and would have taken over payments had she known about the default, none of this testimony was adduced at trial. The judgment of the trial court must be based upon the evidence actually adduced from the witness stand, from exhibits admitted during trial or from any stipulations agreed upon by counsel. An affidavit is not subject to cross-examination and, standing alone, is inadmissible at trial. The fact an affidavit has been filed in the record does not mean it is admitted at trial. At trial, appellee's affidavit was neither offered nor admitted as evidence, nor was she questioned about it. To the contrary, appellant established that the amount of the proceeds that would have been

---

[7] The rule as codified in Ohio is identical to the rule as codified in Tennessee. *Compare* Tenn. Code Ann. § 47-9-626, *with* Ohio Rev. Code Ann. § 1309.626.

realized had proper notice been sent was the same as the amount actually received. The evidence established that the vehicle was sold at a public auction and that the auction house obtained the highest price possible for the collateral at auction at that time. Thus, even if notice had been sent to appellee, appellant's evidence establishes the amount realized at the public auction would have been unchanged, and therefore, still been less than the $19,944.06 obligation, and appellee and Mr. Werner would still be liable for the same deficiency. No evidence was submitted at trial to refute this.

{¶ 36} Therefore, the only evidence before the trial court at the conclusion of the trial is that the proceeds amount that would have been realized had appellant sent notice is the same as the amount actually realized, which is less than the secured obligation. Therefore, the trial court erred in its analysis of [Ohio Rev. Code Ann. section] 1309.626 because here appellant did rebut the presumption that the amount realized is the same as the secured obligation. Therefore, appellant is entitled to a deficiency judgment.

*Id.* at 902–03 (citations omitted) (internal quotations omitted). Had the burden been on the plaintiff creditor in *Werner* to negate the ability or intent of the defendant debtor to redeem or purchase the collateral, it would have been entirely irrelevant that the defendant debtor failed to properly introduce evidence of what her actions would have been had she received proper notice.[8]

Although we conclude that a secured creditor need not affirmatively negate a debtor's or guarantor's ability or motivation to redeem or purchase the collateral for an amount equal to the sum of the secured obligation, expenses, and attorney's fees in order to rebut the statutory presumption and create a fact question, this does not mean that such evidence is not relevant to the ultimate determination of the amount of proceeds that would have been realized had the secured creditor provided the statutorily required notice, and thus, whether the creditor might be entitled to a deficiency judgment. Assuming that a secured creditor, in the first instance, rebuts the statutory presumption and thereby creates a question of fact, the debtor or guarantor should be allowed to introduce evidence regarding the ability and motivation to redeem or purchase the collateral for an amount equal to the sum of the secured obligation, expenses, and

---

[8] The Court of Appeals made this very point in this case. *Regions II*, 2016 WL 1719325, at *11 ("[I]t does not ultimately matter that the Guarantors failed to present evidence in this case on what they would have done had they been given notice. Under the statute, Regions was the party initially obligated to show that providing notice would not have mattered. It failed to introduce any evidence on this issue.").

attorney's fees as countervailing evidence. The secured creditor, of course, may introduce contradictory evidence. The trial court should consider and weigh such evidence as part of the totality of the relevant evidence introduced by the parties in ultimately determining the fact question of what amount of proceeds would have been realized had the noncomplying secured creditor provided the statutorily required notice, and the amount of the deficiency, if any, to which the creditor may be entitled.[9] As previously noted, the burden of proof, however, remains on the noncomplying secured creditor to prove by a preponderance of the evidence that the sale of the collateral still would have yielded proceeds less than the sum of the secured obligation, expenses, and attorney's fees had proper notice been provided.

Contrary to Regions' contention,[10] we do not view the language of the codified rebuttable presumption rule, Tennessee Code Annotated section 47-9-626(3) and (4), as excluding evidence regarding the ability and motivation of a debtor or guarantor to redeem or purchase the collateral for an amount equal to the sum of the secured obligation, expenses, and attorney's fees. There is certainly nothing in the language of the relevant statutory provisions that limits relevant evidence to that concerning the fair market value of the collateral. We similarly do not find the prior decisions of the Court of Appeals to suggest that such evidence is irrelevant. Indeed, as far as we are able to glean, in none of those decisions was such evidence even proffered by the debtors or guarantors, much less excluded by the courts. *See, e.g.*, *R & J of Tenn., Inc.*, 166 S.W.3d at 210–11.

The purpose of the notice requirements supports the relevance of such evidence in those cases in which a creditor has failed to comply with the statutory notice requirements. As the Court of Appeals noted some fifty years ago, "[t]he purpose of this

---

[9] We reiterate that our holding in this regard is limited to those cases in which the creditor has failed to provide the statutorily required notice. As we previously noted, we are not required to and do not undertake in this case to determine whether such evidence is relevant in those cases in which the statutorily required notice is provided but the disposition of the collateral is otherwise not commercially reasonable as required by Tennessee Code Annotated section 47-9-610.

[10] In both the trial court and the Court of Appeals, Regions contended that evidence regarding the ability and motivation of Guarantors to redeem or purchase the Aircraft for an amount equal to the sum of the secured obligation, expenses, and attorney's fees was wholly irrelevant to the determination of whether the sale of the Aircraft still would have yielded an amount less than the sum of the secured obligation, expenses, and attorney's fees had Regions provided proper notice, and so was irrelevant to the determination of whether Regions was entitled to a deficiency judgment. Regions does not expressly make this argument in the body of its brief in this Court. However, Regions' request for relief from this Court suggests that it still espouses this position.

notice, without doubt, is to enable the debtor to protect his interest in the property by paying the debt, finding a buyer or being present at the sale to bid on the property or have others do so, to the end that it be not sacrificed by a sale at less than its true value." *Mallicoat v. Volunteer Fin. & Loan, Inc.*, 415 S.W.2d 347, 350 (Tenn. Ct. App. 1966). The court more recently reiterated this purpose in *R & J of Tennessee, Inc.*:

> The policy justifications for providing notice to a debtor are equally applicable to a secondary obligor, and can be stated as follows: "We think the provision for notice in connection with a sale is intended to afford the debtor a reasonable opportunity (1) to avoid a sale altogether by discharging the debt and redeeming the collateral or (2) in case of sale, to see that the collateral brings a fair price. A notice that does not afford him this reasonable opportunity is not reasonable notification and a sale under it is not commercially reasonable."

166 S.W.3d at 203 (citations omitted). Permitting a debtor or guarantor to introduce evidence of the ability and motivation of the debtor or guarantor to redeem or purchase the collateral for an amount equal to the sum of the secured obligation, expenses, and attorney's fees is wholly consistent with this purpose.

Decisions from other jurisdictions lend further support to the relevance of such evidence. *See Bank of Am., N.A. v. Sea-Ya Enters., LLC*, No. CA 11-445-RGA, 2013 WL 126268, at *3 (D. Del. Jan. 9, 2013); *In re Wilmington Hospitality. LLC*, 320 B.R. 73, 77 (Bankr. E.D. Pa. 2005); *C & J Leasing Corp. v. Beasley Invs., Inc.*, 767 N.W.2d 420 (Iowa Ct. App. 2009); *Werner*, 886 N.E.2d at 903.

Accordingly, we conclude that both the trial court and the Court of Appeals erred in their respective applications of the codified rebuttable presumption rule. In this case, Regions rebutted the statutory presumption and created a question of fact by presenting evidence that the Aircraft was sold for an amount in excess of fair market value. It then became incumbent on the trial court to consider the totality of the evidence presented to determine whether the sale of the Aircraft still would have yielded proceeds less than the sum of the secured obligation, expenses, and attorney's fees had proper notice been provided, as Regions contended. We further conclude that remand to the trial court is appropriate in this case in order for the trial court to conduct those proceedings necessary for the proper application of the rebuttable presumption rule as we have articulated that Rule herein.

The trial court excluded and did not consider evidence regarding the ability and motivation of Guarantors to redeem or purchase the Aircraft for an amount equal to the sum of the secured obligation, expenses, and attorney's fees. As a result, it did not make

any findings in this regard. As noted, during the trial before the first appeal and remand, Regions successfully sought to preclude Guarantors from introducing evidence regarding what they would have done had they received notice of the sale and, particularly, evidence regarding their ability and motivation to redeem or purchase the Aircraft for an amount equal to the sum of the secured obligation, expenses, and attorney's fees. On remand, Guarantors moved for entry of a final judgment of dismissal on the ground that Regions had failed to meet its burden to show that Guarantors were incapable of redeeming or purchasing the Aircraft for an amount equal to the sum of the secured obligation, expenses, and attorney's fees. Guarantors supported their motion with an affidavit attesting to the Guarantors' ability to redeem or purchase the collateral. Regions opposed that motion on the ground that such evidence was irrelevant and cited the trial court's prior exclusion of testimony in this regard. The trial court denied Guarantors' motion. In their proposed findings of fact and conclusions of law, Guarantors attempted to rely, at least in part, on the previously excluded testimony. The trial court did not include those particular proposed findings in its findings of fact, conclusions of law, and judgment, at least implicitly rejecting the relevance of evidence regarding Guarantors' ability and motivation to redeem or to purchase the Aircraft for an amount equal to the sum of the secured obligation, expenses, and attorney's fees.[11] In the Court of Appeals, Guarantors sought to rely not only on the previously excluded testimony, but also on the affidavit which they had submitted in support of their unsuccessful motion to dismiss. In this Court, Guarantors again cite to the excluded testimony at the original trial and to the affidavit submitted in support of their previously denied motion for entry of a final judgment of dismissal on remand.

The only relevant testimony of Guarantors in the record is the stricken testimony of Mr. Thomas, in which he testified that he could have paid the actual sale price of $875,000 or slightly higher. Even had this testimony been admitted, it fails to establish that Guarantors could have redeemed the Aircraft or purchased it for an amount equal to the sum of the secured obligation, expenses, and attorney's fees. To the extent that Guarantors attempt to rely on Mr. Thomas' affidavit to buttress this testimony, they may not properly do so. Once the trial court denied Guarantors' motion to dismiss, in support of which the affidavit was filed, the affidavit ceased to have any evidentiary significance for purposes of the trial court's entry of a judgment on the merits following remand. *See Nagarajan v. Terry*, 151 S.W.3d 166, 178 (Tenn. Ct. App. 2003) ("As a general matter, evidence introduced at trial takes the form of testimony of live witnesses who are subject

---

[11] As previously noted, the trial court expressly rejected Guarantors' contention that Regions had the burden of negating Guarantors' ability and motivation to redeem or to purchase the Aircraft at a price equal to or in excess of the debt plus expenses and attorney's fees. The trial court, however, did not expressly address the relevance of such evidence if presented by Guarantors in response to Regions' evidence of fair market value.

to cross-examination, depositions of unavailable witnesses who have been available for cross-examination, and properly authenticated exhibits. The Tennessee Rules of Civil Procedure do not provide for the use of affidavits as evidence at trial except by consent." (citing *Botts v. Botts*, No. 6, 1990 WL 183742, at *7 (Tenn. Ct. App. Nov. 29, 1990); *Turner v. Turner*, 776 S.W.2d 88, 90 (Tenn. Ct. App. 1988)); *see also Werner*, 886 N.E.2d at 903 (explaining with respect to the evidentiary status of a debtor's affidavit: "The judgment of the trial court must be based upon the evidence actually adduced from the witness stand, from exhibits admitted during trial or from any stipulations agreed upon by counsel. An affidavit is not subject to cross-examination and, standing alone, is inadmissible at trial. [T]he fact an affidavit has been filed in the record does not mean it is admitted at trial. At trial, appellee's affidavit was neither offered nor admitted as evidence, nor was she questioned about it." (citations omitted) (internal quotation marks omitted)).[12]

The record, therefore, is insufficient for this Court to make the necessary findings for the proper application of the rebuttable presumption rule, even were the Court so inclined. Consequently, remand to the trial court for the receipt of proof and the finding of facts necessary to the proper application of the rebuttable presumption rule, and for the proper application of that rule, is appropriate. *See, e.g.*, *Raines v. Nat'l Health Corp.*, No. M2006-1280-COA-R3-CV, 2007 WL 4322063, at *7 (Tenn. Ct. App. Dec. 6, 2007) ("Often when a trial court's decision rests upon an improper legal standard and omits necessary factual and legal analysis, it is appropriate to remand the case to the trial court for reconsideration.").

### C. Fair Market Value

The trial court found that the fair market value of the Aircraft on the date of sale was $1,500,000. The parties raised in the Court of Appeals numerous issues regarding the trial court's determination of fair market value, but the Court of Appeals deemed those issues pretermitted. The parties continue to raise those issues in this Court, and Guarantors raise an additional issue as well.[13]

---

[12] In their brief in this Court, Guarantors additionally cite to certain Regions documents and testimony to support their contention that they could have redeemed the Aircraft or purchased it for an amount equal to the sum of the secured obligation, expenses, and attorney's fees. We find, however, that the cited evidence alone fails to support this contention.

[13] Because the Court of Appeals chose to pretermit these issues, this Court must decide whether to remand this case to the Court of Appeals or to address these issues for the sake of judicial economy. Under the facts of this case, we conclude that we must address these issues.

Guarantors raise as an additional issue in this Court whether the trial court erred in determining the fair market value of the Aircraft as of the date of sale, rather than as of the date of repossession. In their brief in the Court of Appeals, however, Guarantors failed to state this as an issue in their "Statement of Appellants' Issues," although they did address it in a subsection of one section of the argument portion of their brief. This is insufficient to properly preserve the issue for appeal, and the issue is waived. *See Hodge*, 382 S.W.3d at 334–35 ("Subject to the exceptions in Tenn. R. App. P. 13(b), issues are properly raised on appeal to this Court when they have been raised and preserved at trial and, when appropriate, in the intermediate appellate courts and when they have been presented in the manner prescribed by Tenn. R. App. P. 27. . . . [A]n issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4)." (footnote omitted) (citations omitted)).

Both parties raise issues regarding the underpinnings of the trial court's finding that the Aircraft had a fair market value of $1,500,000 as of the date of sale. Regions, for its part, contends that although the trial court indicated that it was utilizing as a starting point the "blue book" average retail value for the subject model aircraft from the Winter 2008/2009 Blue Book,[14] the $2,000,000 figure stated by the trial court actually came from the Summer 2008 Blue Book. Regions asserts that the trial court inadvertently utilized the $2,000,000 figure from the Summer Blue Book; that the relevant blue book was the Winter 2008/2009 Blue Book; and that the trial court intended to utilize this edition, which stated an average retail value of $1,600,000 for the subject model aircraft.

Guarantors respond that the error was not on the part of the trial court, but rather was on the part of Regions' witness Joe Duncan. This is simply incorrect. The deposition testimony of Joe Duncan designated by the parties contained a discussion, albeit brief, of both the average retail value of $2,000,000 according to the Summer 2008 Blue Book; and, the average retail value of $1,600,000 according to the Winter 2008/2009 Blue Book.

Regardless, there is internal inconsistency in the trial court's finding regarding the starting point for its fair market value determination. Moreover, we are unable to glean from the record whether the trial court erred in its designation of the edition of the Blue Book it intended to utilize, or erred in its designation of the average retail value figure it intended to utilize. Therefore, we cannot determine whether the trial court's finding that the starting point for its determination of fair market value was $2,000,000 was correct.

---

[14] The "Blue Book" is an industry publication which is published quarterly and contains average retail and wholesale values for the preceding ninety-day period for aircraft by model year.

Guarantors, for their part, contend that the trial court erred in reducing the stated $2,000,000 average retail value by $500,000 in determining the fair market value of the Aircraft. According to Guarantors, the trial court improperly relied on testimony from Joe Duncan in determining that this deduction should be made when the court had excluded that portion of Mr. Duncan's testimony. The only evidence cited by the trial court for the proposition that the average retail blue book value for the subject model aircraft should be reduced by $500,000 in determining the fair market value of the Aircraft was the testimony of Joe Duncan that the Aircraft "needs over a half million dollars spent on it now to make it current with everything else that's on the market." The trial court, however, had granted Guarantors' motion to exclude this portion of Mr. Duncan's testimony so the court could not properly rely on this testimony. The Court is unable to glean from the record whether the trial court inadvertently relied on Mr. Duncan's excluded testimony or whether the court intended to reverse its prior ruling excluding this portion of Mr. Duncan's testimony.

Both parties raise issues regarding the trial court's use of the average retail value set forth in any version of the Blue Book as the basis for its determination of the fair market value of the Aircraft as of the date of sale. Both parties contend that other testimony and evidence in the record established either a lower fair market value (Regions) or a higher fair market value (Guarantors) for the Aircraft than the average retail value for the subject model aircraft as set out in either the Summer 2008 Blue Book or the Winter 2008/2009 Blue Book.

The evidence offered by the parties relative to fair market value includes both live testimony from witnesses at the original trial, and deposition testimony.

Haglund, Graubart, Conn, and Duncan each offered testimony bearing on the fair market value of the Aircraft, and the parties variously have relied on the testimony of each. The trial court concluded that each of these witnesses qualified as an expert witness with respect to the matters as to which each was permitted to testify,[15] and cited testimony of each of these witnesses in its Findings of Fact. The trial court found that "[t]he evidence established that on December 2, 2008, the fair market value of the Aircraft was $1,500,000.00 and not $875,000.00." The trial court later stated in its Conclusions of Law that the testimony of Joe Duncan established the fair market value of

---

[15] The trial court also made this determination with respect to Regions' witness Jeff Martin. The trial court, however, did not cite to any testimony by Mr. Martin, nor do the parties rely on his testimony to support their respective contentions regarding the fair market value of the Aircraft.

$1,500,000. A review of Mr. Duncan's testimony, however, indicates that he did not testify that this was the fair market value of the Aircraft. Rather, it appears that the trial court is referring to Mr. Duncan's testimony regarding the Blue Book average retail value and that the basis for the trial court's finding of a starting value of $2,000,000 was actually the Blue Book.[16] It further appears that the basis for the trial court's deduction of $500,000 from that starting figure to arrive at a fair market value of $1,500,000 was the previously excluded testimony of Mr. Duncan.

The Court already has determined that remand is necessary for application of the rebuttable presumption rule. Given that the issue of the fair market value of the Aircraft is also relevant to the trial court's ultimate determination of whether Regions is entitled to any deficiency judgment, the Court concludes that remand to the trial court also is appropriate for the trial court to revisit its determination of fair market value of the Aircraft at the time of sale.

### D. Other Issues

Both parties raise collateral evidentiary issues potentially bearing on the trial court's determination of the fair market value of the Aircraft. Regions challenges the trial court's exclusion of portions of the testimony of Joseph Duncan and Edd Conn. Guarantors challenge the trial court's limitations on Guarantors' ability to introduce evidence impeaching Regions' expert witness, Mark Graubart. These evidentiary issues are inextricably intertwined with the trial court's determination of the fair market value of the Aircraft as of the date of sale. Because that issue is being remanded, the Court declines to address these evidentiary issues at this time. The trial court, in its discretion, may revisit these evidentiary determinations on remand in light of the opinion.

Guarantors also challenge the trial court's finding that Regions had incurred $425,000 in expenses necessary to render the collateral marketable. In determining the amount of the deficiency, the trial court added this amount to the amount of the secured debt. Guarantors contend that the record fails to contain evidence supporting the necessity and reasonableness of these expenses as is required for their potential recovery as a part of the calculation of any deficiency pursuant to Tennessee Code Annotated sections 47-9-610(a) and 47-9-626. Regions counters that the record sufficiently supports this amount of expenses. The amount of expenses is also intertwined with the issue of whether Regions is entitled to any deficiency judgment. Accordingly, the Court also remands this issue to the trial court. In its discretion, the trial court may take any

---

[16] As previously noted, it is unclear whether the trial court intended to utilize the Summer 2008 Blue Book and its value of $2,000,000.00, or the Winter 2008/2009 Blue Book and its value of $1,600,000.00.

additional proof the court deems appropriate and may revisit the issue, if the court deems it appropriate.

Regions raises as an issue in this Court the trial court's calculation of pre-judgment interest. The trial court determined that Regions was entitled to pre-judgment interest on the deficiency at the rate of 3% which equated to $83.65 per day, for total pre-judgment interest in the amount of $191,725.80. Regions failed, however, to state this as an issue in the "Statement of Issues" in its brief in the Court of Appeals, although it did address the issue in the argument section of its brief. *Regions II*, 2016 WL 1719325, at *5 n.3. Therefore, we conclude that the issue is waived. *See Hodge*, 382 S.W.3d at 334–35.

Finally, Guarantors raise as an additional issue the Court of Appeals' holding that Guarantors lack standing to seek recovery of a surplus pursuant to Tennessee Code Annotated section 47-9-625, in the event that the trial court finds there to be a surplus on remand. We find the analysis of the Court of Appeals to be well-reasoned on this issue. Therefore, we affirm the Court of Appeals' holding that Guarantors lack standing to seek recovery of any surplus.

### E. Remand

In light of our holding that Regions has sufficiently rebutted the statutory rebuttable presumption and has created a question of fact, on remand the trial court is to determine the amount of proceeds that would have been realized had Regions provided the statutorily required notice, and the amount of the deficiency, if any, to which Regions may be entitled. Regions bears the burden of proof with respect to these issues. In order to make these determinations, the trial court is to consider the totality of the evidence introduced by the parties, including evidence with respect to the fair market value of the Aircraft as of the date of sale, the Guarantors' ability and motivation to redeem or purchase the collateral for an amount equal to the sum of the secured obligation, expenses, and attorney's fees,[17] and the amount of the reasonable and necessary expenses incurred by Regions to render the Aircraft marketable pursuant to Tennessee Code Annotated section 47-9-610(a).

The trial court shall permit the parties to introduce additional testimony and evidence regarding the Guarantors' ability and motivation to redeem or purchase the

---

[17] Once again, we note that our holding in this regard is limited to those cases in which the creditor has failed to provide the statutorily required notice. We do not address those cases in which notice is provided but the sale of the collateral is otherwise commercially unreasonable.

collateral for an amount equal to the sum of the secured obligation, expenses, and attorney's fees. The trial court, in its discretion, may permit additional discovery relevant to this question. The trial court, in its discretion, also may permit additional discovery and the introduction of additional evidence regarding the fair market value of the Aircraft as of the date of sale and regarding the reasonable and necessary expenses incurred by Regions to render the Aircraft marketable. Finally, the trial court, in its discretion, may reconsider its evidentiary rulings regarding the testimony of witnesses Mark Graubart, Edd Conn, and Joe Duncan.

## CONCLUSION

For the reasons stated herein, we reverse the judgment of the Court of Appeals. We also vacate the judgment of the trial court and remand the case to the trial court for further proceedings consistent with this opinion.

_____
JEFFREY S. BIVINS, CHIEF JUSTICE