IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 4, 2025

## BILL W. GENTRY v. CINCO RESEARCH CORPORATION ET AL.

**Appeal from the Chancery Court for Carter County**
**No. C230207 John C. Rambo, Chancellor**

_____

**No. E2024-01901-COA-R3-CV**

_____

This case originated as a breach of contract action for the sale of a business. Eventually, the parties entered into a settlement agreement in which the defendants agreed to pay $1,000,000.00 by a specified date. A few days before the deadline, the defendants attempted to gain an extension and/or renegotiate the terms. The negotiations did not result in written modification of the settlement agreement, the defendants failed to pay the agreed-upon sum by the deadline, and the plaintiff sued to enforce the settlement agreement. The trial court ruled in favor of the plaintiff, finding that there was no meeting of the minds as to modification, no written modification, and no breach of the duty of good faith and fair dealing. The defendants appeal only the claim that the plaintiff did not breach the duty of good faith and fair dealing. We affirm the decision of the trial court and award the plaintiff reasonable attorney's fees pursuant to the settlement agreement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Mark W. McFall, Johnson City, Tennessee, William W. Sames, General Machine and Tool Co, and Cinco Research Corporation, and William Sames, Ph.D.

Danny P. Dyer, Knoxville, Tennessee, for the appellee, Michael L. Tripplett, Personal Representative of the Estate of Bill W. Gentry.

**MEMORANDUM OPINION**[1]

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

# I. FACTUAL AND PROCEDURAL HISTORY

On July 11, 2023, Plaintiff/Appellee Bill W. Gentry ("Appellee")[2] filed a complaint against Defendants/Appellants Cinco Research Corporation ("CRC"), General Machine and Tool Company ("General Machine"), and William Sames (together with CRC and General Machine, "Appellants") in the Chancery Court for Carter County ("the trial court"). Therein, Appellee alleged that the parties entered into a contract in 2022 for Appellants to purchase General Machine, Appellee's former company, and that Appellants breached that contract. According to Appellee, the transaction between the parties consisted of four documents: (1) a Promissory Note made by CRC in which CRC agreed to pay Appellee $1,750,000.00 to purchase General Machine; (2) a security agreement made by General Machine granting Appellee a security interest in certain collateral; (3) a stock pledge agreement made by CRC granting Appellee a lien on all the issued and outstanding common stock in General Machine; and (4) a limited guaranty of the promissory note in which Mr. Sames personally guaranteed up to $750,000.00 of the indebtedness owed by CRC to Appellee.[3]

The case proceeded for some time until March 28, 2024, when the parties filed a joint motion to stay, indicating that they had entered into a settlement agreement ("the Settlement Agreement") on March 19, 2024. The motion stated that the parties' obligations under the Settlement Agreement would be due in six months' time; the parties therefore asked that the action be stayed pending completion of the terms of the Settlement Agreement. Relevant to this appeal, the Settlement Agreement contains provisions

---

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] Mr. Gentry died on February 1, 2025, after the conclusion of the trial court proceedings. After a suggestion of death was filed, the personal representative of his estate was substituted as the plaintiff by this Court. For ease of reading, we simply refer to this party as Appellee throughout this Opinion.

[3] These documents were filed under seal by agreement of the parties.

requiring all modifications to its terms to be made in writing,[4] for attorney's fees,[5] and for a specific amount of damages upon default.[6]

On October 3, 2024, Appellee returned to the trial court and filed a motion to enforce the Settlement Agreement. Therein, Appellee alleged that Appellants failed to meet their obligation to pay $1,000,000.00 by the deadline of September 19, 2024. Appellee therefore asked that the trial court enter a judgment against CRC in the amount of $1,785,182.10 plus interest, a judgment against Mr. Sames for $750,000.00, attorney's fees, and injunctive relief.

The motion to enforce the Settlement Agreement was eventually heard on November 14, 2024. According to the statement of evidence produced in this appeal, Mr. Sames testified that he associated with Clifton Onolfo, the CEO of Global Cities Capital, LLC ("GCC") to obtain a loan to pay the settlement amount. Mr. Sames produced an email from his attorney to Appellee's attorney dated September 16, 2024, in which she asked for a thirty-day extension to pay the required amount (less a $20,000.00 good faith payment up front), or to come to an alternative agreement as outlined in the email. Mr. Sames testified that CRC needed an infusion of capital from GCC to pay the amount required under the Settlement Agreement, as CRC could not make the required payment. But Mr.

---

[4] The Settlement Agreement states as follows: "13. **Modification in Writing.** No waiver, change or modification of this Agreement shall be valid unless the same is in writing and is signed by the party to be bound thereby."

[5] The Settlement Agreement states as follows:

8. **Attorneys' Fees, Expenses, and Costs.** Should it be necessary to initiate any action to enforce the terms of this Agreement, or any action for breach of this Agreement, the prevailing party shall be entitled to an award of the reasonable attorneys' fees, expenses and costs incurred in prosecuting any such action for enforcement and/or breach of this Agreement, even if such action is resolved without proceeding to a judgment. Each party shall continue to perform its duties and obligations under this Agreement and the Escrow Agreement pending resolution of any disputes.

[6] The Settlement Agreement states as follows:

If [Appellants] fail to deliver the Settlement Amount to [Appellee] by the Six-Month Date, by their signatures below, the Parties authorize and direct their respective counsel to tender to the Court an Agreed Judgment, generally in the form of the document attached hereto as Exhibit E providing for the entry of judgment in favor of [Appellee] and against: (a) CRC for all amounts due under the Note, plus interest and attorneys' fees; (b) [Mr.] Sames for $750,000 plus attorneys' fees pursuant to the Limited Guaranty, and (c) General Machine under the Security Agreement authorizing repossession and sale of the remaining Collateral (the date of that judgment, the "Judgment Date"). To avoid dispute as to the amount of the judgment as of the Judgment Date, it is stipulated and agreed that, as of February 9, 2024, the unpaid balance of the Note is $1,873,129.80; that per diem interest of $412.90 will continue to accrue and that [Appellee] has incurred attorney fees and litigation expenses of $19,501.48.

Sames conceded that he had not been in contact with Appellee at any time following the execution of the Settlement Agreement to discuss payment options.

Mr. Onolfo testified that he contacted Appellee beginning on September 18, 2024, both via text message and phone call. Mr. Onolfo produced the following text messages between himself and Appellee:

Wed. Sep. 18 at 4:07 PM

Mr. Onolfo:  Hello [Appellee], this is the CEO of Global Cities Capital. Clifton.
I am looking to invest $2-3 million in a couple of machine shop businesses with the real estate in East TN with Will Sames. Seems the customers, the target company to merge and my understanding is you have a Promissory note I need to settle as well which needs to be done before bankruptcy which would stop my investment.
Can we have a call or coffee as I am in TN now. We manage Industrial properties from New York to Miami.
Clifton. [Phone number omitted].

Wed, Sep 18 at 8:23 PM

Mr. Onolfo:  I just received drafts from Legal and sending to you via email to review and send to your lawyer. Thank you. Clifton.
Appellee:    Thanks

Thu, Sep 19 at 9:59 AM

Mr. Onolfo:  How are you? Just starting my day locally. Clifton.
Mr. Onolfo:  Let me know if you want to have a cup of coffee so you and [I] can shake one another's hands. I am a little old school that way as my word is my bond in addition to paper.
Appellee:    That would be great but I have to take my wife for a procedure this morning at the doctor's office in Bristol. Will take 4 hours.
Mr. Onolfo:  Ok perfect, later today in afternoon is fine. I have a 1pm for an hour other than that you're the priority.
Mr. Onolfo:  Text me after.

Thu, Sep 19 at 11:59 AM

Mr. Onolfo:  My 1pm flew in early and has already been to see the real estate we are buying. I am free to come to you at your convenience. Clifton.
Appellee:    I'm in Bristol at the gastrology associates. My wife just went back. They said it's 3 to 4 hour procedure. I wanted to ask you to make the payment $750,000.00 because I have other obligations I need to take care of. I owe the broker that sold me

- 4 -

6% on the sale plus income tax and attorneys fees. I have some other obligations that amounted to $84,000.00. I have sold a Jeep Sahara, a barge and a potato planter to have money to make it. Could you please do that for me I would be very grateful. The other thing is that I understood you to say that [GCC] would be responsible for the remainder of the payment. [Appellee].

Mr. Onolfo: These are somewhat reasonable and ready to head to Bristol hospital coffee shop and I (Global Cities) am now majority owner of the business upon your signature. So $750,000 and $250,000 is possible if we sign today. Look forward to meeting you, and getting your advice and even giving you some fees for helping steer some business our way.

Appellee: I just talk to my attorney. He said you must pay the $750,000.00 today and the $250,000.00 in 30 else [Mr. Sames] is in default and we will have to enter judgment and talk about a settlement later. Sorry but I have to take his advice.

Mr. Onolfo: Lawyers like to litigate, you and I like and can do business I hope especially per your health.
Remember I did my deal with [Appellants] for $3.75m based on you saying "yes" last night on the phone for the 45-60 days to get this done $650 at closing and $375 by end of next year.
Obviously I won't put $3.75m into anything if that's the BK case.
[Mr. Sames] is bust and will have to file Bankruptcy business then personally so nothing there in the business or the personal and will take a year or two.
Let me know, the one pager is in your hand to sign or not, it's 30-45 days until we close this deal and you get $625 and $375 next year unless we sign off today where I am agreeable to $750 and $250 which I will edit in person with you.
Otherwise I leave tomorrow to Miami as I don't have time for

Thu, Sep 19 at 5:12 PM

Mr. Onolfo: So I am headed to dinner in Kingsport. You seem like a great man. Thank you for taking my calls. Looks like it's going to be a pass on the project for my firm. If Danny or you text me this evening I will reply. But too much baggage to work through. And I don't do lawyers and BK liquidations. Lawyers destroy families and businesses, to make their fees.

Appellee: My attorney says he can't call you until tomorrow.

Mr. Onolfo: So Ok initial or sign off document so entity is not in default please.

Mr. Onolfo: At midnight it's in default and I can't touch it.

Thu, Sep 19 at 9:27 PM

Mr. Onolfo: I know it's late but I had Eric my attorney update the Amendment to your terms of $750,000 at closing and $250,000 by the 1 yr anniversary of closing, in your email. Please see email. I am headed to bed and to Miami tomorrow. I accept these terms you requested yesterday and today. Would have used a different solution if you had not agreed yesterday. Please sign off so you don't lose significant value and time in BK.

Fri, Sep 20 at 12:13 PM

Appellee: Danny Dyers email [email omitted]

Fri, Sep 20 at 1:14 PM

Mr. Onolfo: Still nothing from Danny. It's going to fall to you and me. I have a meeting at 5pm with the local investor. Let me know if I should keep that meeting or pass. So we don't embarrass him too.

Appellee: I know you are a smart and reasonable man and you have millions to invest. If you really want to make a deal, the money has to come at the time of the signing. And since [Mr. Sames] is in default now the full $1,000,000.00 is due.

Mr. Onolfo: Good luck. I am a real estate investor. This is an industrial real estate fund. Pension fund money I manage and allocate is very restricted. Looking at Alcoa plant now.

Mr. Onolfo: You are not a man of your word. So we don't fit.

Mr. Onolfo: You made me make a commitment upon stating you would do the $625 and $375. Then changed. That's when it ended. You made me a liar.


In the meantime, on September 18, 2024, at 9:49 pm, Mr. Onolfo sent an email to Appellee detailing a $3,750,000.00 loan that GCC was prepared to make to General Machine. The same day at 9:50 pm, Mr. Onolfo sent Appellee a document titled "First Amendment to Gentry settlement Agreement," which provided that Appellee would be paid $650,000.00 "[o]n the date of the closing of the Loan referred to in the Commitment Letter" and $375,000.00 one year later. None of these documents were ever executed by Appellee, and no payment on the amount specified by the Settlement Agreement was made by the September 19 deadline or thereafter.

The trial court entered its order in favor of Appellee on November 21, 2024. Therein, the trial court found that Appellants failed to meet their obligation to deliver $1,000,000.00 to Appellee on or before September 19, 2024, as required by the Settlement Agreement. The trial court further found that

> 5. [Appellants] initiated contact with [Appellee] on September 18, 2024, in an attempt to negotiate an agreement that would amend the terms of the Settlement Agreement.
>
> 6. The communication of various terms between the parties did not result in an offer and acceptance or agreement as to payment terms that would alter the terms of the Settlement Agreement.
>
> 7. The Settlement Agreement further required that any amendment be in writing and signed by the parties. That did not occur.
>
> 8. The Court does not find any fraud has been proven or that there was any breach of the implied covenant of good faith and fair dealing.

So the trial court awarded Appellee a judgment for $1,955,74.80, plus post-judgment interest, possession of the collateral that was subject to the security interest, and attorney's fees and expenses of $24,960.00. Appellants thereafter timely appealed to this Court.

## II. ISSUES PRESENTED

Appellants present a single issue in this appeal: "Whether the trial court erred in finding that [Appellee] did not breach the implied duty of good faith and fair dealing in the performance and enforcement of the parties' Settlement Agreement." In addition to arguing that the trial court did not err in finding no breach of the implied duty of good faith and fair dealing, Appellee asks for an award of attorney's fees incurred on appeal.

## III. STANDARD OF REVIEW

Appellee's motion to enforce the Settlement Agreement was decided by the trial court following a bench trial. This Court reviews the trial court's findings of fact after a bench trial "de novo upon the record with a presumption of correctness, 'unless the preponderance of the evidence is otherwise.'" **Regions Bank v. Thomas**, 532 S.W.3d 330, 336 (Tenn. 2017) (quoting Tenn. R. App. P. 13(d)).

## IV. ANALYSIS

### A.

"A settlement agreement made during the course of litigation is a contract between the parties, and as such, contract law governs disputes concerning the formation, construction, and enforceability of the settlement agreement. *Waddle v. Elrod*, 367 S.W.3d 217, 222 (Tenn. 2012) (citing *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006)). And all contracts have an implied duty of good faith and fair dealing. *See Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 660 (Tenn. 2013) (citing *Wallace v. Nat'l Bank of Com.*, 938 S.W.2d 684, 686 (Tenn. 1996)). The implied duty of good faith and fair dealing "honors the reasonable expectations of the contracting parties" and "protects the rights of the parties to receive the benefits of the agreement into which they entered." *Kinard v. Nationstar Mortg. LLC*, 572 S.W.3d 197, 208 (Tenn. Ct. App. 2018) (citing *Lamar Adver. Co. v. By-Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009)). Thus, "[e]ach party to [a] contract [i]s under an implied obligation to restrain from doing any act that would delay or prevent the other party's performance of the contract." *ACG, Inc. v. Se. Elevator, Inc.*, 912 S.W.2d 163, 168 (Tenn. Ct. App. 1995) (quoting *The Wil-Helm Agency v. Lynn*, 618 S.W.2d 748 (Tenn. Ct. App. 1981)). "[W]hat constitutes good faith, and breach thereof, will vary based upon the particulars of each contract and the facts of each case[.]" *Healthmart USA, LLC v. Directory Assistants, Inc.*, No. M2012-00606-COA-R3-CV, 2013 WL 1804292, at *4 (Tenn. Ct. App. Apr. 29, 2013) (citing Restatement (Second) of Contracts, *Duty Of Good Faith And Fair Dealing* § 205, comment a (2012)). As a result, "the question of whether a party acted in good faith is a question of fact." *Id.*

Yet, as this Court has explained,

"The implied covenant does not, however, 'create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement.'" [*Ike v. Quantum Servicing Corp.*, No. 11-02914, 2012 WL 3727132, at *5 (W.D. Tenn. 2012)] (quoting *Goot* [*v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2003-02013-COA-R3-CV], 2005 WL 3031638, at *7 [(Tenn. Ct. App. Nov. 9, 2005)]). "Notably, a breach of the implied covenant of good faith and fair dealing is not an independent basis for relief, but rather 'may be an element or circumstance of recognized torts, or breaches of contracts.'" *Weese* [*v. Wyndam Vacation Resorts*, No. 3:07-CV-433], 2009 WL 1884058, at *5 ([E.D. Tenn. June 30, 2009)] (quoting *Solomon v. First Am. Nat'l Bank of Nashville*, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989)). "Thus, 'absent a valid claim for breach of contract, there is no cause of action for breach of implied covenant of good faith and fair dealing.'" *Ike*, 2012 WL 3727132, at *5 (citing *Envoy Corp. v. Quintiles Transnat'l Corp.*, No. 3:03cv0539, 2007 WL 2173365, at *8 (M.D. Tenn. July 26, 2007 (applying North Carolina law)).

*Berry v. Mortg. Elec. Registration Sys.*, No. W2013-00474-COA-R3-CV, 2013 WL 5634472, at *7 (Tenn. Ct. App. Oct. 15, 2013).

Although Appellants contend that Appellee did agree in a phone call to accept $650,000.00 as a partial payment on CRC's obligation, the trial court found that no enforceable agreement containing offer and acceptance was created nor that any modification of the Settlement Agreement was made in writing as required therein.[7] Appellants have not appealed those decisions, as they have not argued that any enforceable modification of the Settlement Agreement was ever made or that Appellee breached said amendment. Instead, they contend that entering into negotiations with Mr. Onolfo but then refusing to formally commit to a modification was a breach of the duty of good faith. And they assert that when Appellee "materially changed the payment terms and amounts that he would accept" during the negotiations, Mr. Onolfo was forced to withdraw his commitment to loan CRC funds. In other words, they contend that Appellee's actions delayed or prevented Appellants' performance of their obligations under the Settlement Agreement because it prevented them from obtaining the funds needed to perform.

As an initial matter, we note that Appellants point to no contractual obligation that was actually breached in this case; instead, they assert only an independent claim for breach of the implied duty of good faith and fair dealing. So then, it appears that Appellants' claim must fail for that reason alone. *See Duke v. Browning-Ferris Indus. of Tenn., Inc.*, No. W2005-00146-COA-R3-CV, 2006 WL 1491547, at *9 (Tenn. Ct. App. May 31, 2006) ("The fact that Mr. Duke's Complaint asserts an independent claim for breach of good faith and fair dealing should negate that cause of action."). But even considering Appellants' arguments on appeal, we cannot conclude that Appellee breached any express or implied duty owed to Appellants. *See id.* (going on to consider whether a breach of the duty of good faith was shown after "assum[ing] *arguendo* that this claim can stand alone").

Importantly, the proof presented at trial demonstrates that nothing Appellee did frustrated Appellants' ability to meet their obligations under the Settlement Agreement. Indeed, the purpose of the communications from Appellants to Appellee, via Mr. Onolfo or otherwise, was never to actually meet their obligation to pay $1,000,000.00 by September 19, 2024. For one, Mr. Sames admitted that CRC did not have the funds to make the payment required under the Settlement Agreement. Instead, these eleventh-hour negotiations were to modify the parties' agreement to persuade Appellee to accept less payment on that date in return for a promise of future payment. That Appellee did not promptly acquiesce in Appellants' requests that Appellee accept less than what he was

---

[7] The trial court's findings are rather sparse. *See generally Lovlace v. Copley*, 418 S.W.3d 1, 34–35 (Tenn. 2013) (holding that while findings are required by Tenn. R. Civ. P. 52.01, no bright-line rule exists for testing the sufficiency of a trial court's factual findings; instead, "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue" (quoting 9C Charles A. Wright et al., *Federal Practice and Procedure* § 2571, at 328 (3d ed. 2005))). However, neither party argues that the trial court failed to comply with Rule 52.01 of the Tennessee Rules of Civil Procedure, and we choose to soldier on to consider the single substantive issue in this appeal because the basis of the trial court's ruling is readily ascertainable. *See Manning v. Manning*, 474 S.W.3d 252, 260 (Tenn. Ct. App. 2015).

undisputedly owed simply does not amount to a breach of his duty to act in good faith. Moreover, Appellee was under no obligation to assist Appellants in paying their debts; the contract required nothing more from him at that time than to accept payment. Because no effort to pay *what was owed* ever occurred, there is no actionable claim for breach of the implied duty of good faith and fair dealing.

This case is therefore far from analogous to ***Wil-Helm Agency v. Lynn***, 618 S.W.2d 748 (Tenn. Ct. App. 1981), which is cited in Appellants' brief. In ***Wil-Helm Agency***, a theatrical agency entered into a contract with musical performer, Loretta Lynn. *Id.* at 749. Eventually, both parties sued for breach of the contract. The trial court found in favor of the performer, ruling that the agency breached the contract and released the performer from her obligations. *Id.*

We affirmed the decision of the trial court. The proof showed that a member of the agency engaged in significant misconduct while managing the performer, including insulting a producer that was negotiating a contract with the performer and multiple instances of drunkenness while performing duties related to the performer. *Id.* at 751.[8] Under the contract, each party had certain obligations that were "essential to the realization of benefits under the contract." *Id.* But "the conduct of [the member] as the representative of the agency was entirely inconsistent with the duty owed the artist under the contract." *Id.* at 752. We therefore affirmed the finding that the agency had hindered performance under the contract such that the performer could treat the contract "as broken[.]" *Id.*

Respectfully, nothing in this case approaches the level of misconduct that occurred in ***Wil-Helm Agency***. Here, Appellants came to Appellee with an eleventh-hour attempt to renegotiate their agreed-upon obligations under the Settlement Agreement. The record is unclear as to why Appellants delayed until the day prior to the deadline to begin working to obtain an extension or to finalize any loan needed to pay their debt. Regardless, the record is completely devoid of proof that Appellee in any way hindered Appellants' performance under the Settlement Agreement. As such, the evidence does not preponderate

---

[8] These instances of drunkenness included:

(5) drunken vomiting on the dinner table at a post-performance party given for patrons, promoters, disc jockeys and their wives; (6) drunkenness throughout most of a tour in England; (7) drunkenness during the time Loretta was preparing jingles for the Coca Cola ads; (8) getting drunk and passing out during the signing of the Glo-coat contract; (9) being so drunk while emceeing Loretta's performance at a rodeo that he fell off the stage; (10) drunkenness when taping Loretta on the Ed Sullivan Show; (11) insulting the black musicians while on the David Frost Show; (12) being drunk on practically every road trip, interfering with Loretta's need for rest on the bus, ignoring instructions of airline personnel while on flights, and generally being an obnoxious drunk in the presence of people upon whom the success of the artist depended.

*Id.*

against the trial court's finding that Appellee did not breach any implied duty of good faith and fair dealing with regard to this transaction.

**B.**

Finally, Appellee requests that he be awarded attorney's fees incurred on appeal under Paragraph 8 of the Settlement Agreement and for defending against a frivolous appeal under Tennessee Code Annotated section 27-1-122. As a reminder, the Settlement Agreement provides as follows:

> Should it be necessary to initiate any action to enforce the terms of this Agreement, or any action for breach of this Agreement, the prevailing party shall be entitled to an award of the reasonable attorneys' fees, expenses and costs incurred in prosecuting any such action for enforcement and/or breach of this Agreement, even if such action is resolved without proceeding to a judgment.

Here, there can be no dispute that Appellee instituted this action to enforce the Settlement Agreement and that he is the prevailing party. As such, we agree that he is entitled to reasonable attorney's fees and costs as set forth in the Settlement Agreement. Any question of whether Appellee is entitled to costs under section 27-1-122 is therefore pretermitted.

**V. CONCLUSION**

The judgement of the Carter County Chancery Court is affirmed, and this cause is remanded to the trial court for further proceedings, including the determination of Appellee's reasonable attorney's fees and costs incurred in this appeal. Costs of this appeal are taxed to Appellants, Cinco Research Corporation, General Machine and Tool Company, and William Sames, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE